UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
            :

BARBARA FINCH, individually, on behalf of  :
Manny Moe and on behalf of all others    :
similarly situated, CAROL JORDAN,      :
individually and on behalf of all others similarly:
situated, and BARBARA ORTIZ, individually  :
and on behalf of all others similarly situated,  :
            :
         Plaintiffs,       :
            :
      - against -       :
            :
NEW YORK STATE OFFICE OF      :
CHILDREN AND FAMILY SERVICES;    :
JOHN A. JOHNSON, individually and in his  :
capacity as the Commissioner of the New York :
State Office of Children and Family Services;  :
THE CITY OF NEW YORK,       :
ADMINISTRATION FOR CHILDREN'S   :
SERVICES; WILLIAM C. BELL, individually :
and in his capacity as Commissioner of the  :
Administration for Children's Services of the  :
City of New York; DAVE R. PETERS,    :
individually and in his capacity as Director,  :
State Central Register, New York State Office :
of Children and Family Services, Division   :
of Development and Prevention Services; JANE:
DOE 1, individually and in her capacity as a  :
Supervisor of the State Central Register; JANE :
DOE 2, individually and in her capacity as an :
employee of the State Central Register; JOHN :
DOE 1, individually and in his capacity as a  :
Supervisor of Administration for Children's  :
Services; JOHN DOE 2, individually and in his :

**OPINION AND ORDER**

04 Civ. 1668 (SAS)

1

**capacity as an employee of Administration** :
**for Children's Services; NEW** :
**ALTERNATIVES FOR CHILDREN, INC.; and**:
**TALBOT PERKINS AGENCY,** :
:
**Defendants.** :
---------------------------------------------------------------- X

## SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

Barbara Finch, Carol Jordan, and Barbara Ortiz bring this putative

class action against, *inter alia*, the New York State Office of Children and Family

Services ("OCFS") and the New York City Administration for Children's Services

("ACS"). The plaintiffs allege that the defendants' practice of unduly delaying

administrative hearings at which the plaintiffs could challenge reports that they

abused or mistreated children violated the plaintiffs' due process rights. The

plaintiffs claim that during the delays, their names and the allegations of child

abuse were listed on the State Central Register, damaging their prospects for

employment or licensure in the childcare field. The plaintiffs' original complaint

brought claims for money damages and injunctive relief; a prior ruling by this

court dismissed the claims for monetary relief and part of the injunctive claims,

but did not dismiss claims for prospective injunctive relief against individual

2

defendants.[1]

Pursuant to Federal Rule of Civil Procedure 23, the plaintiffs now move to certify a class of all persons: (1) who are working or desire to work or to be licensed in the childcare field; (2) who are now, or in the future will be, listed on the Statewide Central Register as subjects of indicated reports of child abuse that were investigated by and indicated by a designated investigative agency; (3) who timely requested amendment of the indicated reports; and (4) whose requests for amendment have not been disposed of.[2]  For the following reasons, the plaintiffs' motion is granted in its entirety.[3]

## II.  BACKGROUND

---

[1]     *See Finch v. New York State Office of Children and Family Servs.* (*"Finch"*), 499 F. Supp. 2d 521, 539-40 (S.D.N.Y. 2007).

[2]     Notice of Motion to Certify the Class ("Class Cert. Motion") ¶ 2

[3]     The plaintiffs requested certification of the class pursuant to both Rule 23(b)(2) and 23(b)(3).  Plaintiffs' Memorandum of Law in Support of Motion to Certify Class ("Pl. Mem.") at 21.  However, a 23(b)(3) certification would be inappropriate because all claims for monetary relief were dismissed in *Finch*, and the plaintiffs seek to certify a class for prospective injunctive relief, not for any individualized relief. *See id*. at 2.  A 23(b)(2) class is warranted when, as here, "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Accordingly, I will only consider the plaintiffs' request for class certification pursuant to Rule 23(b)(2).

3

## A.   Procedural History

Finch, Jordan, and Ortiz originally brought this action in February 2004, alleging that the defendants had violated their Ninth and Fourteenth Amendment rights by unduly delaying administrative hearings at which they could challenge their listing on the State Central Register as subjects of "indicated reports" of child abuse.[4] The plaintiffs brought claims for money damages as well as injunctive and declaratory relief.[5] At the time they filed their complaint, the plaintiffs sought class certification pursuant to Rule 23(b)(2).[6] At a status conference on June 18, 2004, the late Judge Richard C. Casey ruled that class certification should not be decided until after disposition of the defendants' motion to dismiss the complaint under Federal Rule 12(b)(6) and for summary judgment under Federal Rule 56.[7]

This court decided that motion on July 3, 2007, dismissing all claims against the OCFS, all claims for money damages against the defendants in their official and individual capacities, and all claims seeking injunctive relief for past

---

[4]   *See Finch*, 499 F. Supp. 2d at 524.

[5]   *See id.*

[6]   *See id.* at 524 n.1.

[7]   *See id.*

4

conduct.[8] This court did not dismiss the plaintiffs' claims for prospective

injunctive relief against the individual state defendants.[9] With the initial motion to

dismiss and for summary judgment disposed of, the plaintiffs now move to certify

a class pursuant to Rule 23.

## B. Facts[10]

### 1. Statutory Framework

OCFS supervises the provision of child protective services through

local social services districts, which in New York City is the ACS.[11] When a

person is accused of child abuse, ACS investigates and if it finds some credible

evidence to support the allegation, ACS labels the report as "indicated."[12]

Subjects of indicated reports are notified of their status and informed that they

have a right to request that the report be amended to unfounded within ninety

---

[8]    *See id.* at 539-40.

[9]    *See id.* at 540.

[10]   The facts of this case are extensively laid out in this court's prior
       determination of the motion to dismiss and for summary judgment,
       and I will give only a summary here. *See id.* at 525-31.

[11]   *See id.* at 525.

[12]   *See id.* at 526.

5

days.[13]

ACS also refers indicated reports to the State Central Register ("SCR"), a database containing the name of every subject of an indicated report across New York State.[14] Many employers in child care related industries as well as foster care agencies consult the SCR to ensure that applicants will not pose a danger to children.[15] The SCR handles the initial requests to amend from subjects of indicated reports by requesting the investigation file from the local child services agency and making its own determination as to whether there is a fair preponderance of the evidence showing that the subject of the report committed child abuse, and if so, whether such abuse could be relevant and reasonably related to employment or licensing in childcare.[16]

If the SCR does not amend a report to unfounded within ninety days of receiving the request to amend, the subject of the report has a right to an administrative hearing to determine if the report should be amended to

---

[13] *See id.* at 526-27.

[14] *See id.* at 526.

[15] *See id.*

[16] *See id.* at 527.

6

unfounded.[17] Within that ninety day period, the SCR must refer the case to the Bureau of Special Hearings to schedule a hearing.[18] If, after a hearing, an Administrative Law Judge ("ALJ") determines that there is not a preponderance of evidence supporting the allegation of child abuse, the report is amended to unfounded and sealed.[19] If the ALJ determines that there is a preponderance of the evidence that supports the allegation of child abuse, the report remains indicated and a notation is added that the allegations were substantiated by an administrative hearing.[20] In accordance with decisions from the Second Circuit Court of Appeals and the New York Court of Appeals, the SCR cannot respond to a query from an agency or employer about an individual who is the subject of an indicated report but who has not yet received an administrative hearing.[21]

---

[17]   *See id.* at 528.

[18]   *See id.*

[19]   *See id.*

[20]   *See id.*

[21]   *See id.* at 527 n.35 (citing *Valmonte v. Bane*, 18 F.3d 992, 1004 (2d Cir. 1994) ("We hold that the high risk of error produced by the procedural protections established by New York are constitutionally unacceptable."); *Lee TT v. Dowling*, 87 N.Y.2d 699, 712 (1996) ("We conclude that the Due Process Clause of the Federal Constitution requires the [SCR] to substantiate reports of child abuse by a fair preponderance of the evidence before they may be disseminated to providers and licensing agencies as a screening device for future

## 2. The Proposed Class Representatives

### a. Barbara Finch

A report of child abuse against Barbara Finch was called into SCR on April 4, 2001, and ACS found that the report was indicated for inadequate guardianship on June 2, 2001.[22] Finch requested that the report be amended to unfounded on July 15, 2001.[23] Over eighteen months later, on February 6, 2003, the SCR denied Finch's request to amend the report to unfounded and referred her case for an administrative hearing, scheduled for May 15, 2003.[24] The hearing was in fact completed on July 22, 2003, and in an opinion dated August 7, 2003, an ALJ determined that the allegation of inadequate guardianship was not supported by a preponderance of the evidence and thus amended the report to unfounded.[25]

After the report was indicated, but before the report was amended to unfounded, Finch unsuccessfully applied for employment as an Assistant Teacher

---

employment.")).

[22]   *See id.* at 528-29.

[23]   *See id.* at 529.

[24]   *See id.*

[25]   *See id.*

and at a homeless shelter to work with mothers and daughters.[26] Finch believes

that she was denied employment in both instances because her name was on the

SCR as the subject of an indicated report.[27] Additionally, Finch applied for

custody of her grandchild, Manny Moe, in September 2001, but the Family Court

denied custody and limited Finch's visitation rights until June 2003, a deprivation

that Finch also attributes to being listed on the SCR.[28]

### b. Carol Jordan

On August 17, 2001, Jordan learned that she was the subject of

investigation for the medical neglect of her foster daughter, and on October 15,

2001, ACS determined that the report of medical neglect was indicated.[29] On

December 21, 2001, Jordan requested that SCR amend the report to unfounded.[30]

On March 25, 2002, Jordan requested an administrative hearing, and was advised

on September 11, 2003, that the hearing was scheduled for October 9, 2003.[31] The

---

[26]    *See id.*

[27]    *See id.*

[28]    *See id.*

[29]    *See id.*

[30]    *See id.*

[31]    *See id.*

9

hearing was actually held on June 29, 2004, and in a decision dated August 16, 2004, the ALJ found that the report was substantiated on the SCR, but determined that it was not reasonably related to childcare.[32]

In June and August 2003, Jordan was hired as a Teacher's Assistant at a private school in Harlem, New York and as an Assistant Supervisor in a group home at the Children's Village in Westchester County.[33] Both jobs were contingent on SCR clearance, and both offers were rescinded when the employers ascertained that Jordan was the subject of an indicated report.[34]

### c. **Barbara Ortiz**

On May 22, 2003, Ortiz was notified that she was the subject of an indicated report after she applied for an internship with Leake & Watts, which queried the SCR as part of its hiring process.[35] The next day, Ortiz requested that the report be expunged or amended to unfounded.[36] OFCS acknowledged this request on July 30, 2003, and after SCR decided not to amend the report to

---

[32] *See id.*

[33] *See id.* at 529 n.60.

[34] *See id.* at 529-30.

[35] *See id.* at 530 n.63.

[36] *See id.* at 530.

10

unfounded, a hearing was scheduled for June 5, 2004.[37] Prior to the hearing, the

ALJ determined that the report was unfounded and amended the report to reflect

this finding.[38] While the report was pending, Ortiz was unable to seek

employment in the childcare field.[39]

## C. The Proposed Class

The plaintiffs propose to certify a class made up of:

> all persons who are working or desire to work or to be licenced in
> child-related employment who, now and in the future, are listed
> on the Statewide Central Registry of Child Abuse and
> Maltreatment as the subjects of indicated reports that were
> investigated and indicated by a designated investigative agency,
> and who have timely requested amendment of the indicated
> reports and whose requests for amendment have not been
> disposed of.[40]

In support of their motion to certify a class, the plaintiffs provide

documents showing that between November 2007 and April 2008, 313 individuals

in New York City were referred for an administrative hearing after a childcare

---

[37]    *See id.*

[38]    *See id.*

[39]    *See id.*

[40]    Class Cert. Motion ¶ 2.

11

employer or licencing agency queried the SCR.[41] The plaintiffs claim that this

figure indicates that the actual class is approximately 600, as the population of

New York City comprises approximately one-half of New York State's

population.[42] As proof that the class has faced undue delay in awaiting a hearing

before an ALJ, the plaintiffs provide a listing of previous subjects who between

January 2007 and March 2008 received a hearing after an employer or licensing

agency queried SCR about their status, and the amount of time between each

subject's request for a hearing and the hearing itself.[43] The amount of time ranges

from as low as two to three months to as high as several years, with the median

wait time of approximately six months.[44]

## III. LEGAL STANDARD

### A. Rule 23 Class Certification

---

[41] List of Monthly Hearing Referrals from SCR, Ex. A to Declaration of Thomas Hoffman in Reply to Defendant's Opposition to Plaintiff's Motion for Class Certification ("Reply Decl."), at pp. 10-11. This list represents "424-a" referrals, so named for the section of the New York State Social Services law that requires childcare employers to check the SCR database to determine if applicants are subjects of indicated reports of child abuse.

[42] *Id.* ¶ 7.

[43] *See* Notice of Hearing Reports, Ex. B to Reply Decl. at 1-43.

[44] *See* Reply Decl. ¶ 4.

12

### 1. Rule 23(a)

Rule 23 of the Federal Rules of Civil Procedure governs class certification. To be certified, the plaintiff bears the burden of proving that a putative class meets the four criteria set forth in Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.[45] A trial court may certify a class only after determining that each of these criteria have been met, which it can do "only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met."[46] A trial judge may not assess any aspect of the merits unrelated to a Rule 23 requirement, and has ample discretion to circumscribe discovery or the scope of a class certification hearing "in order to assure that a class certification motion does not become a pretext for a partial trial of the merits."[47]

### a. Numerosity

---

[45] *See Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 98-99 (2d Cir. 2007).

[46] *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).

[47] *Id.*

13

The numerosity requirement mandates that a class be "so numerous that joinder of all members is impracticable."[48] "Impracticability does not mean impossibility of joinder, but refers to the difficulty or inconvenience of joinder."[49] Precise calculation of the number of class members is not required,[50] and it is "permissible for the court to rely on reasonable inferences drawn from available facts."[51] A class of forty or more individuals generally satisfies the numerosity requirement.[52]

### b. Commonality

Commonality requires a showing that common issues of law or fact affect all class members.[53] The commonality requirement "may be met where the individual circumstances of class members differ, but 'their injuries derive from a

[48] Fed. R. Civ. P. 23(a)(1).

[49] *In re Independent Energy Holdings PLC Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002). *Accord Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) ("Impracticable does not mean impossible.").

[50] *Robidoux*, 987 F.2d at 935.

[51] *Vengurlekar v. Silverline Techs., Ltd.*, 220 F.R.D. 222, 227 (S.D.N.Y. 2003).

[52] *See id. Accord Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

[53] *See* Fed. R. Civ. P. 23(a)(2). *See also Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992).

14

unitary course of conduct by a single system.'"[54] "A single common question may be sufficient to satisfy the commonality requirement."[55] "The critical inquiry is whether the common questions are at the core of the cause of action alleged."[56]

### c.    Typicality

A class representative's claims are typical under Rule 23(a)(3) when each class member's claims arise from the same course of events and each class member makes similar legal arguments to prove the defendants' liability.[57] "While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses

---

[54]    *Dodge v. County of Orange*, 208 F.R.D. 79, 88 (S.D.N.Y. 2002) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

[55]    *Vengurlekar*, 220 F.R.D. at 227 (citing *German v. Federal Home Loan Mortgage Corp.*, 885 F. Supp. 537, 553 (S.D.N.Y. 1995)).

[56]    *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996) (quotation marks omitted). *See also In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir. 1987) (holding that a defense common to all plaintiffs' claims and dispositive of the action if established satisfies the commonality requirement).

[57]    *See Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 245 (2d Cir. 2007).

15

which threaten to become the focus of the litigation."[58]

### d.     Adequacy of Representation

Plaintiffs seeking to certify a class must show that the proposed

action will fairly and adequately protect the interests of the class.[59]  The plaintiffs

must first demonstrate that "class counsel is qualified, experienced, and generally

able to conduct the litigation."[60]  The plaintiffs must also demonstrate that the

class representatives have no interests that are antagonistic to the proposed class

members and that the representatives will vigorously prosecute the action.[61]

### B.     Rule 23(b)(2)

In addition to meeting the four prerequisites of Rule 23(a), plaintiffs

attempting to certify a class seeking prospective injunctive relief must show that

---

[58]     *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d
Cir. 2000) (quotation marks omitted). *Accord Robidoux*, 987 F.2d at
936-37 ("When it is alleged that the same unlawful conduct was
directed at or affected both the named plaintiff and the class sought to
be represented, the typicality requirement is usually met irrespective
of minor variations in the fact patterns underlying individual
claims.").

[59]     *See* Fed. R. Civ. P. 23(a)(4). *See also Banyai v. Mazur*, 205 F.R.D.
160, 164 (S.D.N.Y. 2002).

[60]     *Marisol A.*, 126 F.3d at 378 (quotation marks omitted).

[61]     *See Vengurlekar*, 220 F.R.D. at 227 (citing *Robinson v. Metro-North
Commuter R.R. Co.*, 267 F.3d 147, 170 (2d Cir. 2001)).

"the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[62] This standard does not require that all plaintiffs be identically situated. "What is important is that the relief sought by the named plaintiffs [ ] benefit the entire class."[63] The Second Circuit has held that when assessing the applicability of Rule 23(b)(2), a district court should initially ask whether "'even in the absence of possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought.'"[64] The court should then ask whether "'the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits.'"[65] A Rule 23(b)(2) class need not be defined as precisely as a Rule 23(b)(3) class, as Rule 23(b)(2) does not provide for monetary or individualized relief, and does not require notice to allow class

---

[62]   Fed R. Civ. P. 23(b)(2).

[63]   *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 342 (S.D.N.Y. 2002) (quotation marks and citation omitted) (alteration in original).

[64]   *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 20 (2d Cir. 2003) (quoting *Robinson*, 267 F.3d at 164)).

[65]   *Id.* (quoting *Robinson*, 267 F.3d at 164).

members to opt out.[66]

In some cases, class certification under Rule 23(b)(2) is not necessary under the rule of *Galvan v. Levine*,[67] in which the Second Circuit held that class certification was unnecessary when the state defendant withdrew the challenged rule and represented that it had no intention of reinstating it. The court explained that

> insofar as the relief sought is prohibitory, an action seeking declaratory or injunctive relief against state officials on the ground of unconstitutionality of a statute or administrative practice is the archetype of one where class action designation is largely a formality, at least for the plaintiffs. As we have recently noted in *Vulcan Society v. Civil Service Comm'n*, 49 F.2d 387, 399 ([2d Cir.] 1973), what is important in such a case for the plaintiffs or, more accurately, for their counsel, is that the judgment run to the benefit not only of the named plaintiffs but of all others similarly situated . . . as the judgment did here. The State has made clear that it understands the judgment to bind it with respect to all claimants; indeed even before entry of judgment, it withdrew the challenged policy even more fully than the court ultimately directed and stated it did not intend to reinstate the policy.[68]

---

[66]  *See Wright v. Giuliani*, No. 99 Civ. 10091, 2000 WL 777940, at * 10 (S.D.N.Y. June 14, 2000) (noting that a Rule 23(b)(2) class "ordinarily requires a less precise class definition" than other Rule 23 classes).

[67]  490 F.2d 1255 (2d Cir. 1973).

[68]  *Id.* at 1261. The Second Circuit has re-affirmed the *Galvan* doctrine on several occasions. *See, e.g., Berger v. Heckler*, 771 F.2d 1556,

Courts focus on four factors in determining whether class certification is necessary under *Galvan*. *First*, notwithstanding the presumption that government officials will abide by a court's decision and not continue to apply an unconstitutional statute or rule to similarly situated individuals, an affirmative statement from the government defendant that it will apply any relief across the board militates against the need for class certification.[69] *Second*, withdrawal of the challenged action or nonenforcement of the challenged statute militates against class certification.[70] *Third*, the type of relief sought can affect the necessity of class certification: where the plaintiffs merely seek a declaration that a statute or policy is unconstitutional, denial of class certification is more appropriate than

---

1566-67 (2d Cir. 1985) (class certification unnecessary where defendant agreed to the enforcement of a decree in favor of nonparties); *Forts v. Ward*, 621 F.2d 1210, 1217 (2d Cir. 1980) (class certification "largely a formality" where State defendants explicitly indicated a willingness to comply with the court's order); *Davis v. Smith*, 607 F.2d 535, 540 (2d Cir. 1978) ("Where retroactive monetary relief is not at issue and the prospective benefits of declaratory and injunctive relief will benefit all members of a proposed class to such an extent that the certification of a class would not further the implementation of the judgment, a district court may decline certification.").

[69]   *Brown v. Kelly*, 244 F.R.D. 222, 236 (S.D.N.Y. 2007) (citing *Blecher v. Dep't of Housing Pres. and Dev.*, No. 92 Civ. 8760, 1994 WL 144376, at * 4 (S.D.N.Y. Apr. 19, 1994)).

[70]   *Id.* (citing *Blecher*, 1994 WL 144376, at *5).

where plaintiffs seek complex, affirmative relief.[71] *Fourth*, courts also consider whether the named plaintiffs' claims are likely to become moot, making class certification necessary to avoid mootness.[72]

## C. Mootness

"[I]n general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot."[73] The mootness doctrine "'ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit.'"[74] The mootness doctrine is "riddled with exceptions, however," and "[w]here the claims of the named plaintiffs become moot prior to class certification, there are several ways in which mootness is not had."[75] When the plaintiffs' claims are "'so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires,'" courts may relate the class

---

[71] *Id.* (citing *Blecher*, 1994 WL 144376, at *5).

[72] *Id.* (citing *Blecher*, 1994 WL 144376, at *5).

[73] *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994) (citing *Board of Sch. Comm'rs of Indianapolis v. Jacobs*, 420 U.S. 128, 129-30 (1975)).

[74] *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 70 (2d Cir. 2001) (quoting *Cook v. Colgate*, 992 F.2d 17, 19 (2d Cir. 1993)).

[75] *Comer*, 37 F.3d at 799.

certification back to the filing of the complaint, even if the named plaintiffs'

claims have become moot prior to the certification of the class.[76] Courts also

recognize exceptions to the mootness doctrine when a class was certified prior to

the named plaintiffs' claims being mooted,[77] a motion for class certification is

pending,[78] or the plaintiff has not yet had a reasonable opportunity to move for

class certification.[79]

## IV. DISCUSSION

### A. Mootness

---

[76] *Id.* (quoting *County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991)).

[77] *See Sosna v. Iowa*, 419 U.S. 393, 399 (1975) ("When the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant.").

[78] *See Comer*, 37 F.3d at 799 (holding that when a class certification motion was pending before a court for over two years, the class certification related back to the filing of the complaint for mootness purposes).

[79] *See In re Nat'l Australia Bank Sec. Litig.*, No. 03 Civ. 6537, 2006 WL 3844462, at *2 (S.D.N.Y. Nov. 8, 2006). *See also Weiss v. Regal Collections*, 385 F.3d 337, 347 (3d Cir. 2004) ("The mootness exception recognizes that, in certain circumstances, to give effect to the purposes of Rule 23, it is necessary to conceive of the named plaintiff as a part of an indivisible class and not merely a single adverse party even before the class certification question has been decided.").

21

As a threshold matter, the plaintiffs have established that their claims cannot be denied based on mootness. While all three class representatives have received due process hearings to challenge their indicated reports of child abuse, this is one of those cases that fits within the exceptions to the mootness doctrine. *First*, delays in administrative hearings are inherently transitory, and a strict application of the mootness doctrine would deprive the plaintiffs of the opportunity to challenge the State's practices and policies in court. The plaintiffs here received hearings after filing their complaint and request to certify a Rule 23(b)(2) class, but before this Court could act on the class certification. The delays the named plaintiffs faced may have been unconstitutional, and their claims should not be mooted merely because the transitory nature of the hearing assignment system provided them with hearings before a class could be certified.

*Second*, the plaintiffs never had a reasonable earlier opportunity to move for class certification. Although this case began in 2004, the plaintiffs were instructed by the late Judge Casey to postpone their motion for class certification until after the disposition of any motion to dismiss. That motion was not decided until 2007. Thus, the plaintiffs were unable to move for class certification between Judge Casey's instruction and the 2007 decision of this Court. Accordingly, I find that the plaintiffs' claims are not moot.

## B.    Rule 23(a) Prerequisites

### 1.    Numerosity

The plaintiffs have adequately shown that the proposed class is sufficiently numerous that joinder would be impractical. The plaintiffs have established that between November 2007 and April 2008, 313 individuals in New York City alone were awaiting an administrative hearing after an employer or licensing agency queried the SCR. While some of these individuals surely have received administrative hearings by now, or will receive hearings before this case concludes, this evidence shows that hundreds, if not thousands, of people are referred for administrative hearings throughout the State. The plaintiffs have also established that prior to November 2007, the median waiting time to obtain a hearing was six months, with some people waiting several years after requesting an amendment to their indicated report to obtain an administrative hearing. Based on the evidence offered by plaintiffs, it is reasonable to infer that of those who are waiting for an administrative hearing, or who will be waiting in the future, many will face delays similar to those faced by the named plaintiffs. While "[t]here is no magic line demarcating constitutional versus unconstitutional delay,"[80] and this Court cannot determine where that demarcation lies when deciding a class

---

[80]    *Finch*, 499 F. Supp. 2d at 535.

23

certification motion, it is reasonable to infer that, across the state, over forty

people are, or will be, facing unconstitutionally lengthy delays.

Secondly, numerosity is satisfied here because joinder of all class

members would be nearly impossible. The number of individuals awaiting a

hearing is constantly changing, with some people leaving the class upon receiving

a hearing and others joining the waiting group by requesting that their indicated

report be amended. Such a fluid class cannot be practicably joined in one action.

Accordingly, I find that the plaintiffs have met the numerosity requirement.

The City of New York challenges the plaintiffs' showing of

numerosity as to ACS and the City defendants based on the plaintiffs' statement

that when SCR requests a file from ACS to begin the review process for possible

amendment, "ACS transmits the investigative file to SCR more than 90% of the

time between 15 to 20 days,"[81] in compliance with the twenty day statutory time

limit. The City argues that, based on this statement from the plaintiffs and the

plaintiffs' claim that 313 individuals from New York City were waiting for an

administrative hearing between November 2007 and April 2008, only 31

individuals, or ten percent of the group of 313, faced a delay of more than 15 to 20

days, and of these, several may eventually receive a hearing within a

---

[81]     Class Cert. Motion ¶ 7.

constitutionally permissible time.[82]

Leaving aside the City's very literal application of the plaintiffs' proffered numbers, which were submitted only to provide a basis to infer the likely size of the proposed Rule 23(b)(2) class, the City's argument does not defeat numerosity. The City does not address impracticability of joinder which, as explained above, satisfies the numerosity element here. Further, although the City assumes a compliance rate of ninety percent, it is conceivable that the remaining ten percent – people whose indicated report files are sent by the City to SCR after the twenty day time limit – will easily exceed forty, depending on the number of indicated reports. The arguments presented by the State and the City are insufficient to defeat numerosity.

### 2.    Commonality and Typicality

Although commonality and typicality are two separate criteria for certifying a class, in actions alleging that a governmental policy or action is unconstitutional they "tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)."[83] That analysis should

---

[82]    *See* City Defendants' Memorandum of Law in Opposition to Motion for Class Certification, at 3.

[83]    *Marisol A*, 126 F.3d at 376.

focus on whether "'maintenance of a class action is economical and [whether] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'"[84]

The plaintiffs here easily satisfy the commonality and typicality tests. The named plaintiffs and the class they seek to represent claim that the defendants unconstitutionally delayed the administrative hearings of individuals with indicated reports. That claim is based on the same injury to the class members and it challenges the same state action or policy. The State defendants argue that the reasons for delays in scheduling hearings "vary from case to case," and that this "dispositive" factor eliminates commonality among the named plaintiffs and the class.[85] However, any variation in the reasons for each person's delayed hearing does not negate the common questions of fact and law surrounding the State's policies concerning the SCR and indicated reports, some of which include: (1) whether the policies and practices of the defendants unduly delayed an individual's administrative hearing; and (2) what constitutes an unconstitutional delay. These questions apply to all prospective class members and are not

---

[84]    *Id.* (quoting *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

[85]    State Defendants' Memorandum of Law in Opposition to Motion for Class Certification, at 8.

26

amenable to individualized defenses on the part of the State. The core of this action arises from the same course of conduct by a single system, despite any circumstances that might vary among class members.

The State defendants also argue that the named plaintiffs' claims are not typical of the class, because the named plaintiffs waited over a year for their administrative hearings, while typical current wait times, as suggested by the plaintiffs' evidence of delays between January 2007 and March 2008, are closer to six months. This factual distinction is not sufficient to defeat typicality. While the State defendants are correct in pointing out that the named plaintiffs all waited longer than six months for a hearing, they do not show why this distinction would prevent the named plaintiffs from protecting and advancing the interests of the absent class members. While the named plaintiffs may have waited longer than the typical class member for a hearing, both the named plaintiffs and the class still suffered the same injury as a result of the same State system, and would still use the same legal arguments to establish the defendants' liability. Because the claims of the named plaintiffs and the class are interrelated, a class action is an efficient means of advancing this action while still protecting the interests of the absent class members.

### 3. Adequacy

The State defendants do not challenge the first prong of the adequacy test, which examines the class counsel's qualifications and competence. The Court is satisfied that the plaintiffs' counsel will be able to effectively represent the class as this action proceeds.

The State defendants do challenge the adequacy of the named plaintiffs to represent the class because of a purported conflict of interests between the named plaintiffs and those who waited less than one year for a hearing. The State defendants do not explain why the claims of those who wait longer than one year for a hearing and those who wait less than one year are antagonistic to each other. In fact, there is no conflict, as the named plaintiffs are challenging the same state system, and suffered the same injury, as those who waited for less than one year. Because the named plaintiffs and their claims are typical of the class, there is no conflict of interest stemming from the named plaintiffs having waited more than a year for their hearings.

The State defendants also claim that there is a conflict of interest between the named plaintiffs, who already received a hearing, and those who currently are, or who will be, waiting for a hearing. There is no conflict of interest here either. Aside from the issue of mootness, explained above, the fact that the named plaintiffs already received hearings has no bearing on their ability to

28

represent a class of individuals who currently are, or in the future will be, waiting for a hearing. Because the issues of fact and law are common and the named plaintiffs are typical of the class, there is no antagonism between the interests of plaintiffs who already received hearings and those who are, or who will be, waiting for hearings. Accordingly, I find that the named plaintiffs and their counsel are adequate to represent the class.

## C. Rule 23(b)(2)

### 1. It Is Reasonable for the Plaintiffs to Pursue Class Certification

As to the Second Circuit's threshold question, I find that members of the proposed class will seek declaratory or injunctive relief, even in the absence of possible monetary recovery. All individuals who are, or who will in the future be, facing unduly delayed hearings would reasonably be expected to seek an injunction to end the delay, a declaratory judgment that the State's policies and practices are unconstitutional, or both. Were the plaintiffs to succeed on the merits, such injunctive or declaratory relief would certainly be appropriate to remedy the unconstitutional delays.

### 2. The Proposed Class Is Not Overbroad

The class, as defined by the plaintiffs, is adequately defined under the

29

requirements of Rule 23(b)(2). The State defendants argue that the proposed class is overbroad for two reasons: *first*, that it could include individuals who are not being considered for childcare employment and licensure, but who merely desire to be employed or licensed in childcare and *second*, because the class includes all individuals who have been investigated by local child welfare agencies, while the only discovery conducted has concerned the ACS, New York City's child welfare agency. Neither issue raised by the State is sufficient to show that the proposed class is overbroad, especially in light of the fact that Rule 23(b)(2) classes need not be precisely defined.

*First*, it is not overbroad to include individuals who desire to work in childcare. The class, which already includes those who will face adverse employment prospects because of their listing on the SCR in the future, can certainly include those who would like to apply for a childcare job or licensure, but, knowing that they are listed on the SCR and will be queried by an employer or licensing agent, decline to even begin the application process. The injury to these class members is the same as the injury to any class member whose application for a childcare job or licensure is declined after an employer or licensing agent queries the SCR.

*Second*, it is not overbroad to include in the class those who have

been investigated by a designated local agency. While the State defendants are correct in pointing out that the only discovery to date has involved New York City and ACS, that evidence has been offered in part to allow inferences as to the existence of a viable statewide class. Indeed, the named plaintiffs are challenging a statewide program, and to limit the class only to those who were subjects of indicated reports that were investigated and indicated by the "New York City Administration for Children's Services,"[86] as the State defendants request, risks transforming a statewide class into one made up only of New York City residents. It is unnecessary to so limit the class and to limit any relief a court may grant in the future only to City residents. Accordingly, I find that the class is properly defined and not overbroad.

### 3.    *Galvan* Does Not Compel Denying Class Certification

The State defendants also argue that there is no need to certify a Rule 23(b)(2) class under the rule of *Galvan* because this case is one in which "the government defendants have given no indication that they will not apply a Court judgment made in an individual case to all similarly situated persons,"[87] and that in the event that this Court finds that the delays in scheduling hearings violates the

---

[86]    *Id*. at 20.

[87]    *Id*. at 14.

31

Constitution, "the State defendants can be expected to comply with the Court's declaration with respect to all such affected persons."[88]

        While these statements are likely true, they do not bring this case within the rule of *Galvan*. This case does not fit into any of the four factors laid out in *Blecher*. *First*, notwithstanding the State defendants' statement that they "can be expected to comply" with a ruling by this Court, they have not made an affirmative statement that they will apply any relief to class members across the board.[89] *Second*, the State has not withdrawn the challenged policy or made any indication that it plans to alter it. *Third*, depending on the final decision on the merits, the potential remedy may in fact require complex, affirmative relief. *Fourth*, class certification is required to avoid mootness, as the transitory nature of the hearing scheduling process, explained above, might prevent any plaintiff from fully litigating a challenge to the State's system before he or she is no longer seeking injunctive relief as a result of having obtained a hearing. Because it is reasonable for the named plaintiffs to pursue class action relief, the class is properly defined, and *Galvan* does not compel denial of class certification, I find

---

[88]     *Id.* at 16.

[89]     The State has had ample opportunity to make such a statement since
        the initiation of this action in February 2004, but has never done so.

32

that the plaintiffs have satisfied the requirements to certify a class under Rule

23(b)(2).

## V. CONCLUSION

For the foregoing reasons, plaintiff's motion is granted. The Clerk is

directed to close this motion (docket # 45). A conference is scheduled for August

27, 2008 at 3:30 p.m. in Courtroom 15C.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          August 8, 2008

**-Appearances-**

**Counsel for Plaintiffs:**

Thomas Hoffman, Esq.
Law Offices of Thomas Hoffman, P.C.
250 West 57th Street, Suite 1020
New York, NY 10107
(212) 581-1180

**For Defendants John A. Johnson, Commissioner of the New York State Office of Children and Family Services and Dave R. Peters, Director of the State Central Register:**

Robert L. Kraft
Assistant Attorney General
120 Broadway, 24th Floor
New York, NY 10271
(212) 416-8632

**For Defendants the City of New York, the New York City Administration for Children's Services, former Commissioner William Bell, John Doe 1 and John Doe 2:**

Abigail Goldenberg
Assistant Corporation Counsel
100 Church Street, Room 2-191
New York, NY 10007
(212) 788-1275