UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

:

BARBARA FINCH, individually, on behalf of
Manny Moe and on behalf of all others          :
similarly situated, CAROL JORDAN,
individually and on behalf of all others       :
similarly situated, and BARBARA ORTIZ,
individually and on behalf of all others       :
similarly situated,

:

                Plaintiffs,

:

     - against -

:

NEW YORK STATE OFFICE OF CHILDREN
AND FAMILY SERVICES; JOHN A.               :
JOHNSON, individually and in his capacity as
the Commissioner of the New York State Office  :
of Children and Family Services; THE CITY OF
NEW YORK, ADMINISTRATION FOR               :
CHILDREN'S SERVICES; WILLIAM C. BELL,
individually and in his capacity as Commissioner  :
of the Administration for Children's Services of the
City of New York; DAVE R. PETERS, individually :
and in his capacity as Director, State Central
Register, New York State Office of Children and  :
Family Services, Division of Development and
Prevention Services; JANE DOE 1, individually   :
and in her capacity as a Supervisor of the State
Central Register; JANE DOE 2, individually and   :
in her capacity as an employee of the State Central
Register; JOHN DOE 1, individually and in his    :
capacity as a Supervisor of Administration for
Children's Services; and JOHN DOE 2,          :
individually and in his capacity as an employee of
Administration for Children's Services,         :

               Defendants.              :

--------------------------------------------------------------X

**MEMORANDUM
OPINION AND ORDER**

04 Civ. 1668 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Barbara Finch, Carol Jordan, and Barbara Ortiz bring this class

action[1] against, *inter alia*, the New York State Office of Children and Family

Services ("OCFS") and the New York City Administration for Children's Services

("ACS").[2]  The named plaintiffs allege that inordinate delays in the scheduling of

administrative hearings in which class members can challenge their listing as

subjects of "indicated" reports of child abuse/maltreatment in the Statewide

Central Register of Child Abuse and Maltreatment ("SCR" or the "State Registry")

violate their due process rights.  In particular, plaintiffs claim that the delays

---

[1]    The following class was certified by this Court on August 11, 2008:

> all persons: (1) who are working or desire to work or to be
> licensed in the childcare field; (2) who are now, or in the
> future will be, listed on the Statewide Central Register as
> subjects of indicated reports of child abuse that were
> investigated by and indicated by a designated investigative
> agency; (3) who timely requested amendment of the
> indicated reports; and (4) whose requests for amendment
> have not been disposed of.

*Finch v. New York State Office of Children and Family Servs.*, 252 F.R.D. 192,
194 (S.D.N.Y. 2008).

[2]    In addition to the OCFS, the "State defendants" include John A.
Johnson, individually and as Commissioner of the OCFS ("Commissioner
Johnson"), and Dave R. Peters, individually and as Director of the Statewide
Central Register of Child Abuse and Maltreatment ("Director Peters").  John
Johnson's term in office as Commissioner of OCFS ended on December 31, 2006.
Gladys Carrion, Esq., is now the Commissioner.

2

unconstitutionally infringe their protected liberty interest to pursue the

employment of their choice. Plaintiffs bring this action pursuant to 42 U.S.C. §

1983 seeking the following injunctive relief:

> (a)    That the notice of a right to a section 422 hearing contain the right to request an expedited hearing:

> (b)    That within five days of a class members' request for a hearing, the member be provided with a copy of the reports and records that will be considered at the internal review;

> (c)    That within ten days after a class member's request for a hearing, the member be provided the opportunity, by telephone conference or by written material, to present his or her views to the internal reviewer;

> (d)    That the post-deprivation section 424-a administrative hearing be held within thirty days after request for hearing, and that the decision be issued fourteen days after the conclusion of the hearing; and

> (e)    That the post-deprivation section 422 administrative hearing be held within forty-five days after request for hearing, and that the decision be issued fourteen days after the conclusion of the hearing.

## II.  BACKGROUND

New York Social Services Law § 424-a provides that licensing and

provider agencies ("inquiring employers") are required to request a search of the

SCR database ("SCR database check") before employing, certifying or licensing

persons for employment, certification or licensure in the field of child care. The SCR database check process may yield three different outcomes. If the SCR database check shows that an applicant is not the subject of an indicated report, the SCR sends a letter to the inquiring employer notifying it of that fact, generally within ten days of receiving a clearance request.[3] If the SCR database check identifies an applicant as a subject of an indicated report who has had an administrative hearing confirming the applicant's indicated status, the SCR sends a letter to the inquiring employer notifying it that the applicant is the subject of an indicated report. If the SCR database check identifies the applicant as a subject of an indicated report who has not had an administrative hearing, the SCR does not respond to the inquiring employer. Instead, the SCR sends a letter to the applicant informing her of the right to an administrative hearing. Under *Valmonte*, an inquiring employer may not be notified of the existence of an indicated report before an adminstrative hearing is held.[4]

---

[3]    State Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("State Def. 56.1") ¶ 31.

[4]    Before *Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994), the State Register disclosed a person's indicated status to an inquiring employer before an administrative hearing was held. The issue framed in *Valmonte* was "whether the state's maintenance of a Central Reigster that identifies individuals accused of child abuse or neglect, and its communication of the names of those on the list to potential employers in the child care field, implicates a protectible liberty interest
(continued...)

## III.  DISCUSSION

Plaintiffs now move for summary judgment and seek an Order

"declaring the provisions of Section 422 and 424(a) of the New York Social

Service Law that allow substantial delays in deciding name-clearing hearings [to

be] unconstitutional as applied to the certified class members."[5]  The State

---

[4](...continued)

under the Fourteenth Amendment." *Id.* at 994.  The court held in the affirmative, stating that "the procedures established violate due process, primarily because the risk of error in evaluating the allegations against those included on the list is too great." *Id.*  The State defendants have interpreted *Valmonte* to require silence on the part of the State Register when a potential employer makes a clearance request regarding a job applicant who is the subject of an indicated report and has not yet had an administrative hearing.

[5]  Notice of Motion for Summary Judgment ¶ 1.  This is a rather inartful way of framing the issue as neither section 422 nor 424-a contains any express provision: (1) permitting substantial delays in the scheduling of adminstrative hearings; or (2) imposing any sort of deadlines or timeframes for the scheduling and completion of administrative hearings.  Thus, plaintiffs are challenging the delays resulting from the State's current method of carrying out its statutory mandate.  This is, of course, an as-applied, procedural due process challenge, as opposed to a facial challenge to a state statute.

> At least since the landmark decision of *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), federal courts have traditionally reviewed the constitutionality of legislation as applied to particular facts on a case-by-case basis.  Under this mode of judicial review, a litigant is required to make a showing that a statute will work an unconstitutional result as applied to the facts and circumstances associated with that litigant's conduct. Once a court determines that a statute will work an

(continued...)

5

defendants cross-move for summary judgment and request that all remaining

claims in the Complaint be dismissed. Because there are genuine issues of

material fact with regard to whether a liberty interest is infringed and to the

contours of what process is due class members, both motions are denied.

"To formulate a claim under the Due Process Clause of the

Fourteenth Amendment, a plaintiff must demonstrate that he or she possesses a

constitutionally protected interest in life, liberty, or property, and that state action

has deprived him or her of that interest."[6] The Supreme has held that procedural

due process questions must be analyzed in two steps: "'the first asks whether there

exists a liberty or property interest which has been interfered with by the State; the

second examines whether the procedures attendant upon that deprivation were

constitutionally sufficient.'"[7] The *Valmonte* court held that "the dissemination of

information from the Central Register to potential child care employers, coupled

---

[5](...continued)
> unconstitutional result, it will typically prevent the
> enforcement of that statute against the challenger.

*National Abortion Fed'n v. Gonzalez*, 437 F.3d 278, 293 (2d Cir. 2006) (Walker,
C.J., concurring), *vacated on other grounds by* 224 Fed. Appx. 88 (2d Cir. 2007).

[6]      *Valmonte*, 18 F.3d at 998 (citing U.S. Const. amend. XIV, § 1).

[7]      *Id.* (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460
(1989)).

6

Case 1:04-cv-01668-SAS-JCF   Document 67   Filed 12/18/08   Page 7 of 13

with the defamatory nature of inclusion on the list, does implicate a liberty

interest."[8]  This Court must now decide whether a further extension of *Valmonte* is

warranted.  In particular, the issue *sub judice* is whether a protected liberty interest

is implicated when the SCR is silent and fails to respond to an inquiring

employer's clearance request within a reasonable time of receiving that request.[9]

        There is a disputed issue of fact as to whether the SCR's failure to

respond to a request for clearance from an inquiring employer affects a class

members' protected liberty interest in pursuing the employment of his or her

---

[8]     *Id.* at 994.  The *Valmonte* court explained that,

> the fact that the defamation occurs precisely
> in conjunction with an individual's attempt to
> attain employment within the child care field,
> and is coupled with a statutory impediment
> mandating that employers justify hiring the
> individual, is enough to compel a finding that
> there is a liberty interest implicated.

*Id.* at 1002.

[9]     The State defendants have admitted that "[i]f the SCR database check
shows that the applicant is not the subject of an indicated report. the SCR sends a
letter to the inquiring agency notifying it of that fact within ten days of receiving a
clearance request."  State Def. 56.1 ¶ 31.  It is unclear whether this ten-day period
is statutorily mandated or simply the practice of the SCR.  It is also unclear
whether inquiring employers are somehow notified of this ten-day rule or if they
learn of it after having made numerous, repeat clearance requests.  *Cf.* N.Y. Social
Services Law § 424-a(e)(ii).

choice.[10] When the State Register fails to respond within ten days of receiving a

request or shortly thereafter, an inquiring employer *may* presume that the applicant

is the subject of an indicated report, albeit one who has not yet had an

administrative hearing. Silence, when there is an expectation of speech, can

communicate a message. There is insufficient evidence in the record, however, for

this Court to infer that silence by the SCR is the equivalent of actual notice of an

indicated report. This issue must be resolved at trial.

If this Court were to find an infringed-upon protected liberty interest,

the next question to decide is how much "process" is "due." As stated by the

Supreme Court,

> resolution of the issue whether the administrative
> procedures provided here are constitutionally sufficient
> requires analysis of the governmental and private interests
> that are affected. . . . More precisely, our prior decisions
> indicate that identification of the specific dictates of due
> process generally requires consideration of three distinct

---

[10]    In ruling on the State defendants' motion to dismiss, this Court stated:

> The requirement that potential employers consult the list of
> indicated child abusers before hiring prospective
> employees results in an employer learning of an applicant's
> inclusion in the Registry, by operation of law. This is true
> whether SCR responds with notice of indication *or does*
> *not respond at all.*

*Finch v. New York State Office of Children and Family Servs.*, 499 F. Supp. 2d
521, 534 (S.D.N.Y. 2007) (footnote omitted, emphasis added).

8

> factors: First, the private interest that will be affected by
> the official action; second, the risk of an erroneous
> deprivation of such interest through the procedures used,
> and the probable value, if any, of additional or substitute
> procedural safeguards; and finally, the Government's
> interest, including the function involved and the fiscal and
> administrative burdens that the additional or substitute
> procedural requirement would entail.[11]

This Court must balance the three *Mathews* factors to determine "when, under our

constitutional system, judicial-type procedures must be imposed upon

administrative action to assure fairness."[12]

Plaintiffs have made a strong showing on two of the three factors.

The liberty interest at hand, freedom to pursue the employment of one's choice, is

undoubtedly a valuable interest worthy of serious attention. So, too, plaintiffs

have made a strong showing of the high risk of erroneous deprivation of this

interest by offering a study indicating that the expungement rate for indicated

reports is approximately 74%.[13] On the other side of the equation, the State

defendants have asserted a very strong interest in protecting children.

---

[11]    *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976) (citations omitted).

[12]    *Id.* at 348.

[13]    *See* Ex. I to the 10/6/08 Declaration of Thomas Hoffman, plaintiffs' counsel, at 5.

9

> The New York Legislature has declared that "[a]bused and
> maltreated children in this state are in urgent need of an
> effective child protective service to prevent them from
> suffering further injury and impairment," and that "[i]t is
> the purpose of this title to encourage more complete
> reporting of suspected child abuse and maltreatment and to
> establish in each county of the state a child protective
> service capable of investigating such reports swiftly and
> competently and capable of providing protection for the
> child or children from further abuse or maltreatment . . . ."[14]

Furthermore, the State defendants argue that compliance with the specific

injunctive relief requested by plaintiffs would cost the State of New York

approximately $3,860,000 in annual salaries for additional staff.[15]  While

plaintiffs' counsel disputed this estimate at oral argument, he did not point to any

countervailing evidence.  Assuming these numbers to be accurate, there is still not

enough evidence in the record regarding the fiscal component of any

constitutionally-required modifications to current procedures.  Without knowing

the cost of additional safeguards or expedited hearings, there is no way of

knowing how much process is due and, therefore, whether there is a constitutional

deprivation of due process in the first place.

---

[14]    NY Social Services Law § 411.

[15]    *See* State Defendants' Statement of Material Facts Pursuant to Local
Civil Rule 56.1 ¶ 79.  This estimate was prepared by Edna Mae Reilly, Associate
Commissioner for Financial Management with the OCFS.  *See* Declaration of
Edna Mae Reilly, Ex. 5 to the Declaration of Robert L. Kraft in Support of State
Defendants' Motion for Summary Judgment.

10

The inadequacy of the current cost evidence is highlighted by the

hypothetical I proposed to the parties at oral argument.  To settle this case, I

suggested the following:

- 422 hearings be completed within six months from the date of request, with decisions issued thirty days from the conclusion of the hearing, provided that appellants residing in Upstate New York consent to having the hearing held in one of three centers located in Rochester, Syracuse and Albany;[16]

- 424-a hearings be completed within sixty days from the date of request, with decisions issued fifteen days from the conclusion of the hearing, provided that appellants residing in Upstate New York consent to having the hearing held in one of three centers located in Rochester, Syracuse and Albany.[17]

The State defendants are hereby ordered to determine the costs associated with the

above suggestions.  If the State defendants have substitute suggestions, they are

also ordered to determine the costs of each such proposal.  This evidence, which

will become part of the trial record, is due by January 9, 2009.

---

[16]     Because this is a Rule 23(b)(2) class, this requirement will not spawn further litigation from those class members who object to the amount of travel that will be required on their part.

[17]     This will necessitate a change in the internal timetable currently in effect.  For example, local child protective services would be given fourteen days to complete their investigations.  The State Register would then have thirty days to complete its investigations.  To meet the sixty-day cap, administrative hearings would then have to be scheduled within the next sixteen days.  These deadlines are subject to further negotiation by the parties.

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment

and defendants' cross-motion for summary judgment are denied.  Counsel are

directed to contact Chambers by January 5, 2009, to schedule the non-jury trial in

this matter.  The Clerk of the Court is directed to close these motions (Documents

# 54 and 60).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 19, 2008

12

## - Appearances -

**For Plaintiffs:**

Thomas Hoffman, Esq.
Law Offices of Thomas Hoffman, P.C.
250 West 57th Street, Suite 1020
New York, New York 10107
(212) 581-1180

**For State Defendants:**

Robert L. Kraft
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8632