9.7.10

Ordsacsfinchjntpretrial

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

BARBARA FINCH individually, on behalf
of Manny Moe and on behalf of all others
similarly situated, CAROL JORDAN,
individually and on behalf of all others similarly
situated and BARBARA ORTIZ, individually
and on behalf of all others similarly situated,

                    Plaintiffs,

          -against-

NEW YORK STATE OFFICE OF CHILDREN
AND FAMILY SERVICES; JOHN A. JOHNSON,
individually and in his capacity as the Commissioner
of the New York State Office of Children and
Family Services; THE CITY OF NEW YORK,
ADMINISTRATION FOR CHILDREN'S SERVICES;
WILLIAM C. BELL, individually and in his capacity
as Commissioner of the Administration for Children's
Services of the City of New York; DAVE R. PETERS,
individually and in his capacity as Director,
State Central Register, New York State Office of Children and
Family Services, Division of Development and
Prevention Services; JANE DOE 1, individually and
in her capacity as a Supervisor of the State Central Register;
JANE DOE 2, individually and in her capacity as an
employee of the State Central Register; JOHN DOE 1,
individually and in his capacity as a Supervisor of Administration
for Children's Services; and JOHN DOE 2, individually and in
his capacity as an employee of Administration for Children's
Services;

                    Defendants
-------------------------------------------------------x



Docket No. 04 CV 1668
(SAS) (JCF)

**JOINT PRE-TRIAL ORDER**



USDC
DOCUS
ELECTRON
DOC #: _____
DATE FILED: 9/7/10

          Having conferred among themselves and with the Court pursuant to Rule 16, Fed.
R.Civ.P., the parties adopt the following statements, directions and agreements as the
Pretrial Order:

1

1.    **TRIAL COUNSEL**

Names, address and telephone numbers of counsel who will try the case are:

Thomas Hoffman                                    Andrew M. Cuomo
Law Offices of Thomas Hoffman, P.C.               Attorney General State of N.Y.
250 W. 57 St., Suite 1020                         Robert L. Kraft, Esq.
New York, N.Y. 10107                              Vincent Leong, Esq.
212 581 1180                                      Assistant Attorney General
                                                  State of New York
                                                  120 Broadway
                                                  New York, N.Y. 10271-0332
                                                  212 416 8632

2.    **NATURE OF ACTION AND JURISDICTION/VENUE**

**Plaintiff's Position:**

A.    This is a 42 U.S.C. 1983 action that challenges 1) the name clearing hearing
      delay resulting from the State's current method of carrying out its mandate
      under Social Service Laws 422 and 424-a; and 2) the disclosure of a
      Registry listing before a due process hearing has been held.

**Defendants' Position:**

      State does not agree with plaintiff's second contention, (a)(2), that the case
      is about pre-due process disclosure. The nature of action should only
      include the question about whether the OCFS's timing complies with the
      due process clause.

B.    Jurisdiction is conferred upon this court by virtue of 28 U.S.C. Sections
      1331 and 1343 (a)3 and 4, in that this action is authorized by 42 U.S.C.
      Section 1983 and the Constitution of the United States to redress
      deprivations of constitutionally and statutorily protected rights and interests
      under color of state law.

3.    **JURY/NON JURY:**

This is a non-jury trial.  The estimated number of trial days are as follows:

Plaintiff:    3 - 4 days

Defendant:    2 -3 days

4.    **AMENDMENTS/DISMISSALS**

**Plaintiff:**

The monetary claims against the State and all claims against the named State's agents and employees in their individual capacity have previously been dismissed. Finch v. State, 499 F.Sup. 2d 521 (S.D.N.Y. 2007).  The claims against the City of New York have been settled.

**Defendant:**

Not at this time.

5.    **UNDISPUTED FACTS:**

1.    In 2008 there were 296,050 intake calls to the SCR (OCFS 10062) (Plaintiffs' proposed Stip. Fact #1)

2     In 2008 there were 176,558 Reports to the SCR which were received by the hotline (OCFS 10062)(Plaintiffs's proposed Stip. Fact #2)

3.    In 2008 there were 245,023 data base checks received made to the SCR. (OCFS 10062)(Plaintiffs's proposed Stip. Fact #3)

4.    In 2008, OCFS received 7,102 requests administrative review and/or hearings to amend indicated reports, of which 5,687 were section 422 requests and 1,415 were 424-a requests. (OCFS 10062) (Plaintiffs'

3

proposed Stip. Facts 4, 5 & 6)

5.     In 2008, there were 296,587 intake calls to the SCR (OCFS
       10062)(Plaintiffs' proposed Stip. Fact #7)

6.     In 2009 there were 179,843 Reports of child abuse or maltreatment
       registered to the SCR. (OCFS 10062)(Plaintiffs' proposed Stip. Fact #8)

## 6.     CONTENTIONS OF THE PARTIES:

### For Plaintiff:

1.     Delays in processing clearances to those who have requested a hearing
       represents to the class members an unconstitutional deprivation of the
       fundamental liberty interest to pursue one's employment of choice and the
       foster care licensure necessary to raise a biologically related child.

2.     Delays suffered by class members in awaiting a clearance substantially
       impacts employment or licensure opportunities.

3.     In light of the inordinate error rate in the review process coupled with the
       heightened liberty interest that is implicated, post-deprivation hearings held
       ten months to a year or more after Request for amendment or expungement
       is constitutionally untimely.

4.     OCFS, employing existing resources and without incurring significant
       administrative or fiscal burdens, could meet the court's proposed deadlines
       to process 424-a Requests for hearings.

5.     Using a separate track to expedite liberty-implicated reviews requires a shift
       in priorities - not necessarily additional staffing.

6.     Conducting R&R reviews, as required by law, will reduce the number of
       hearings BSH will have to conduct and thereby allow the availability of
       more ALJ's to conduct the expedited hearings.

7.     Providing plain-English notice to subjects of their opportunity to refute
       allegations in Report or alternatively to show that the Report is not R&R,
       will result in a more accurate Administrative Review process, reduce the

4

number of administrative hearings and expedite the issuance of clearances to the inquiring agency.

8.      Increasing the use of electronic communications would incur little additional costs and will expedite the review process.

9.      In light of the history of substantial delays in processing requests, the court should establish a timetable for reviews consistent with the due process clearance of the 14th amendment.

**For Defendants:**

1.      The timeliness of pre-disclosure Section 422 review and hearings does not cause a deprivation of a liberty interest and therefore, does not trigger a due process analysis.

2.      The timeliness of a pre-disclosure Section 424-a review and hearing does not deprive a subject of a liberty interest and does not trigger a due process analysis.

3.      To the extent any subject is dissatisfied with State defendant's conduct, the remedy is for the dissatisfied subject to file a proceeding pursuant to CPLR Article 78 to receive mandamus relief.

7.      **ISSUES OF LAW:**

**Plaintiff's position:**

1.      Has the question of whether the requirement that provider agencies consult the Register prior to an unconditional hire, constitute an infringement of a protected liberty interest, regardless of disclosure, been decided so as to constitute the law of the case?  If not decided should this question be answered in the affirmative.

2.      When a Registry listing infringes upon a person's livelihood, is a delay of eight months to a year or more before the completion of a post-deprivation

5

hearing constitutionally permissible?

3. Is a requirement that the hearing be completed within 60 days for those awaiting a clearance request (424s) and 120 days for employment implicated hearings (422's), consistent with the timeliness of due process hearing precedents for similar governmental infringements?

**Defendant's Position**

1. This action must be dismissed as moot.

2. The mere delay in plaintiffs' respective hearings did not violate due process.

3. Even if plaintiffs demonstrate that the delays in their own hearing violated due process, there is no basis for systemic relief.

8. **SEPARATE TRIAL OF ISSUES**:

**For Plaintiff:**

None

**For Defendants:**

None

9. **PROSPECTIVE WITNESSES:**

**For Plaintiff:**
1. Barbara Finch
2. Carol Jordan
3. Barbara Ortiz
4. Deborah Finley-Troup

6

5. Raisa Tkachenko
   2675 Ocean Ave., Bklyn, N.Y. 11229 (718) 336 8850
   - dismissed when report was admitted but prior to hearing.
6. Nancy Hiller
7. Paul J. Fiore,
   Former Education Director
   Tryon Residential Center
   Johnstown, New York
   20 Pine Avenue
   Johnstown, New York 12095
   518 736 1073
8. Denise St. Rose,
   New York City Bureau of Child Care
   Department of Health and Mental Hygiene
   20 New York Avenue, 3rd Floor,
   Brooklyn, New York 11216
   c/o Amy J. Weinblatt, Esq.
   New York City Law Department
   100 Church Street
   New York, New York 10007
9. Roberta Frederick
10. Charles Carson, Esq.
11. Steven M. Connolly, Esq.
12. Cathy Dufty
13. Catherine Maldonado
14. Deborah Schwencke

**For Defendant:**
1. Roberta Frederick
2. Linda Joyce
3. Charles Carson, Esq.
4. Steven M. Connolly, Esq.

State employees whose testimony will be submitted through deposition:

1. Charles Carson - 5/20/10
2. Steven M. Connolly - 3/20/08 and 5/5/10

7

3.     Cathy Dufty - 6/3/09
4.     Joseph Duffney - 6/3/09
5.     Rhonda Duffney 7/16/09
6.     Michael W. Hannon - 3/25/2008
7.     Nancy Hiller - 5/4/09
8.     Rashawn Hodges - 7/16/09
9.     Roberta Frederick - 3/20/08 and 7/17/09
10.    Derek Jackson - 5/20/10
11.    Brenda Jones - 5/4/09
12.    Linda Joyce 6/4/09
13.    Charlene Lenig - 6/3/09
14.    Catherine Maldonado - 5/5/09
15.    Lisa Maloney - 5/5/09
16.    James McGrath - 7/16/09
17.    Terry Palumbo - 5/7/09
18.    Dave Peters - 6/5/09
19.    Michael Quinn - 5/6/09
20.    Edna Mae C. Reilly - 5/20/10
21.    Wendy Reeves - 7/16/09
22.    Deborah Schwencke 7/16/09
23.    William Schmidt - 7/28/10
24.    Deborah Williams - 6/3/09

State employees whose testimony will be submitted though Declarations:

1.     April 1, 2010 Declaration of Steven M. Connolly:

Par. 1:     "I am employed as a Director and Chief Administrative Law Judge
            with the Bureau of Special Hearings ("BSH") in the New York State
            Office of Children and Family Services ("OCFS"). I have been in
            charge of the BSH from May 2000 to the present. In my position I
            am familiar with the policies and practices of the BSH."

Par. 6:     "BSH is currently comprised of five (5) regional offices, which
            provide a "home base" for the hearing officers. However, to
            facilitate appearances for both the county-based Local Departments
            of Social Services (LDSS) and the subjects of the report, hearings
            are actually held in every county in New York State where the
            individual appellants, the county Department of Social Services
            parties, and their witnesses and attorneys are located."

Par. 7:        "The five (5) regional offices are located in Albany, Buffalo,
               Harlem, Rochester and Syracuse."

Par. 16:       "In 2008 there were 5215 matters referred to the Bureau of Special
               Hearings for scheduling of hearings. These matters included SCR
               related hearings, day care enforcement hearings, adoption subsidies
               hearings, foster care removal hearings, adoption subsidy eligibility
               hearings and hearings relating to programs operated by the
               Commission for the Blind and Visually Handicapped. That figure
               was 5,125 in 2009."

Par. 17:       "In 2008, there were 3822 reports referred to the BSH related to a
               Social Services Law (SSL) Section 422 request for review. In 2009,
               that figure was 3913 referrals related to SSL Section 422."

Par. 18:       "In 2008, there were 895 reports referred to the BSH related to a
               SSL Section 424-a request for review. In 2009, that figure was 763
               referrals related to SSL Section 424-a."

Par. 19:       "In 2008, there were twenty (20) reports referred to the BSH related
               to both SSL Section 424-a requests for review and SSL Section 422s
               request for review. We call these types of hearings "COMBOS'. In
               2009, that figure was 58 referrals related to hearings involving both
               SSL Sections 422 and 424-a."

Par. 20:       "In total, there were 4737 reports referred to the BSH from the
               Statewide Central Register of Child Abuse and Maltreatment in
               2008. However, the additional 478 hearing referrals on matters other
               than child abuse and maltreatment must be factored in, for they too
               have to scheduled and heard. In 2009, the total number of hearing
               referrals from the Statewide Central Register of Child Abuse and
               Maltreatment was 4,734. However, the additional 391 hearing
               referrals on matters other than child abuse and Maltreatment must be
               factored in, for they too have to be scheduled and heard."

Par. 21:       "In 2008, the BSH full time hearing officers issued 3343 hearing
               decisions related to SSL Section 422 and SSL Section 424-a requests
               for review. In 2009, the BSH issued a total of 4824 decisions of all
               hearing types. Of those 4824 decisions, 4397 decision s were related
               to SSL Section 422 and SSL Section 424-a hearings. Of that 4397

9

total, the number of decisions issued by full time hearing officers was 3054. The three Supervising Hearing Officers and Director handled an additional 833 hearings of all hearing types."

Par 22:    "In 2008, the Contract Hearing Officers issued 933 hearing decisions related to SSL Section 422 or SSL 424 requests for review. In 2009, that figure was 510."

2.    April 2, 2010 Declaration of Edna Mae Reilly

Par. 1:    "I am employed as the Associate commissioner of Financial Management with the New York State office of children and Family Services (OCFS). I have held this position since 2003."

3.    March 19, 2010 Declaration of Derek Jackson

Par. 1:    "I am employed as an Assistant Deputy Counsel and Supervisor of the Hearings, Litigation and Appeals Bureau within the legal Division with the new York State Office of children and Family Services (OCFS0. I have held this position since 2008."

Par.5:    "The Hearings, Litigation and Appeals Bureau is responsible for representing OCFS at hearings related to indicated reports of child abuse and neglect at residential child care facilities."

Par. 8:    "Currently the Hearings, Litigation and Appeals Bureau has three Grade 25 Senior Attorneys conducting these hearings on a part-time basis. These attorneys are also responsible for representing OCFS in other types of administrative proceedings. In addition, these attorneys represent OCFS in Family Court proceedings held to address the status of youth in the custody of OCFS."

4.    April 2, 2010 Declaration of Charles Carson

Par. 1:    "I am employed as the Assistant Deputy Counsel and supervisor of the child Welfare Services bureau (formerly the Bureau of House Counsel) within the Division of legal Affairs of the new York State Office of children and Family Services (OCFS). I have held this position since 1998. In that position, I supervised the attorneys who conduct administrative review of indicated reports of child abuse and

10

maltreatment. Prior to 1998, I worked in the Bureau of House counsel and its predecessor bureaus, where one of my duties was to conduct administrative reviews."

Par. 5:        "Both Section 422(8) of the SSL and Section 424-a of the SSL require an administrative review of every indicated report in response to each request for administrative appeal. As it is a requirement in the law, the task must be completed; the option to not conduct an administrative review does not exist. Further, the administrative review must be completed in a way that is meaningful and appropriate for the administrative appeal process."

Par. 6:        "The law currently provides that after the request for administrative appeal by the subject of the report, the SCR shall make a request to the investigative agency for a copy of the record. The investigative agency has no more than 20 days to provide that record. The OCFS then has no more than 15 working days after receipt of such materials to review all such materials in its possession concerning the indicated report. Thereafter, the OCFS must make a determination whether there is a fair preponderance of evidence to find that the subject committed the act or acts of child abuse or maltreatment giving rise to the indicated report  additionally, the determination must be rendered as to whether the substantiated allegations are relevant and reasonably related to employment of the subject of the report by a provider agency, as that term is defined by Section 424-a(3) of the SSL, or relevant and reasonably related to the subject of the report being allowed to have regular and substantial contact with children who are cared for by a provider agency, or relevant and reasonably related to the approval or disapproval of an application submitted by the subject of the report to a licensing agency, as that term is defined by Section 424-a(4) of the SSL."

Par. 7;        "The administrative review is conducted by an attorney within the Child Welfare Services bureau. Each administrative review includes a review of all documents submitted by the investigative agency and any documents submitted by the subject of the report.  The administrative review is solely a document review, there is no provisions for contacting either party for clarification or exposition of information s presented in the documents. At the conclusion of the administrative review, a determination is made as to whether the

11

documents provide a fair preponderance of evidence to support the
allegations in he report that were determined by the investigating
agency to be indicated."

Par. 8:    "If the determination is that the documents do provide a fair
preponderance of the evidence, then the determination must be made
as to whether the indicated report is relevant and reasonably related
to employment or licensure in the child care filed. The attorneys
operate under the presumption that an indicated report is relevant and
reasonably related to employment or licensure in the Child care filed,
unless there is information in the record that addresses this issue.
As there is almost never any information in the record addressing
this issue, the determination that an indicated report is relevant and
reasonably related to employment or licensure in the Child care field
is automatically made in almost all cases."

Par. 9:    "According to data provided by the Statewide Central Register of
child Abuse and Maltreatment (SCR), and submitted to class counsel
in response to his March 2010 discovery request, during calendar
year 2009, there were a total of 7,658 requests for administrative
appeal of indicated report received by the SCR. This included 6,311
requests pursuant to Section 422 of the SSL, and 1,347 request
pursuant to Section 424-a of the SSL."

Par. 10:   "Each of the 7,658 requests would result in an administrative review
being conducted. Therefore, for the year 2009, an average of 148
administrative reviews were conducted each week, or approximately
30 administrative reviews per day."

Par 12.:   "In this context, it is important to note that, as per data provided by
OCFS information technology services and submitted to class
counsel in response to his March 2010 discovery request, between
January 1, 2008 and march 1, 2010, there were administrative
reviews completed on 9,107 reports in response to a request for
administrative appeal under Section 424-a of the SSL."

Par. 13:   "Similarly, between January 1, 2008 and march 1, 2010, there were
administrative reviews completed on 14,726 reports in response to a
request for administrative appeal under Section 422 of the SSL, or a
"combo" request for administrative appal. A "combo" request is a

12

request made under both Section 424-a and 422 of the SSL."

Par. 14:    "In the 26 months between January 2008 and March 2010, 23,833
            reports were subject to administrative review. On average, that is
            916 reports reviewed per month, or approximately 230 per week.
            Therefore, the 148 administrative reviews conducted each week
            involve a number of administrative reviews in which more than one
            report is part of the administrative review."

Par. 15:    "Taking into account the fact that many of the administrative reviews
            involve multiple reports, my experience and the experience of our
            bureau has been that on average, each administrative review take
            approximately 20 minutes when conducted by an attorney trained
            and experienced in conducting the administrative review function.
            Therefore, in order to conduct an average of 30 administrative
            reviews per day, an average of 10 hours of staff time would be
            necessary each day for that purpose."

5.  **April 1, 2010 Declaration of William Schmidt**

Par. 1:     "I am employed as Assistant Director of the Statewide Central
            Register of child Abuse and Maltreatment ("SCR") a division of the
            New York State Office of children and Family Service (OCFS). My
            position is classified by the NYS Department of Civil Services as a
            Child Protective Specialist 4. I have held this position since July
            2004."

Par. 2:     "Prior to my current position, I was employed as a Child Protective
            Specialist 3 with the SCR. I held this position from 2001 to June
            2004. In this position I was familiar with the policies and practices
            of the SCR."

Par. 3:     "Through my current and former positions with the SCR, I am
            familiar with the policies and practices of the SCR."

Par. 9:     "In 2007 the SCR processed 216, 569 requests for database checks,
            or "clearance" checks, from provider agencies, licensing agencies,
            and courts pursuant to Section 424-a of the Social Services Law, or
            other legal mandates."

13

Par. 10:    "In 2007, 6,569 requests for administrative review and hearing were
            received by the SCR.  Of these, 5,174 were 422 related requests, and
            1,395 were 424-a related requests.  This number reflects the number
            of requests, and not the number of subjects appealing their indicated
            report.  In reports with multiple indicated subjects, the subjects may
            request review together, or individually."

Par. 31:    "While 6,569 requests for administrative review and hearing were
            received by the SCR in 2007, 7,658 were received by the SCR in
            2009.  Given the historical trends relating to quantity of reuqest for
            review each year, the SCR operates on the assumption that there will
            be regular increases in requests each year, just as the number of calls
            to the Scr increases each year, and the number of reports registered
            increases each year."


### February 6, 2009 Declaration of Roberta Frederick

Par. 1:     "I am employed as Assistant Director of the Statewide Central
            Register of child Abuse and Maltreatment ("SCR") a division of the
            New York State Office of Children and family Services (OCFS).
            My position is classified by the NYS Department of Civil Service as
            a Child protective Specialist 4.  I have held this position since
            November 2008."

Par. 2:     "Prior to my current position, I was employed as a Child Protective
            Specialist 3 with the SCR.  I held this position from 1984 to October
            2008. In this position I was familiar with the policies and practices of
            the SCR."

Par. 3:     "Through my current and former positions with the SCR, I am
            familiar with the policies and practices of the SCR."

Par. 9:     "In 2007, the SCR received in sum total 275,919 intake telephone
            calls.  (Combination of the mandated reporter line, public access
            line, at special risk and language line.)"

Par. 10:    "In 2007, 186,098 reports of suspected child abuse and maltreatment

14

were forwarded to investigative agencies (Local Department of
Social Service, Administration for Children's Services, OCFS
Regional offices, and the commission on Quality Care and Advocacy
for Persons with Disabilities ) for investigation."

Par. 11:    "In 2007 the SCR processed 216,569 requests for database checks,
or "clearance" checks, from provider agencies, licensing agencies,
and courts pursuant to Section 424-a of the Social Services Law, or
other legal mandates."

Par. 12:    "In 2007, 6,569 requests for administrative review and hearing were
received by the SCR. Of these 5,174 were 422 related requests, and
1,395 were 424-a related requests. This number reflects the number
of requests, and not the number of subjects appealing their indicated
reports. In reports with multiple indicated subjects, the subjects may
request review together, or individually."

Par. 36:    "While 6,569 requests for administrative review and hearing were
received by the SCR in 2007, 7102 were received by the SCR in
2008. "

Defendant's Witnesses:
1.    Roberta Frederick;
2.    Charles Carson;
3.    Steven M. Connolly;
4.    IT who has yet to be identified.


## 10.    EXPERT WITNESSES:

### For Plaintiff:
1.    Robert C. Sugarman, PhD, PE,
RCS Performance Systems, Inc.
4455 Genesee St.
Buffalo, New York 14221
716 634 8016

Dr. Robert Sugarman, an expert on Human Factors, will testify that in his opinion:

1.    424-a Requests can be completed within 60 days from date of Request

without any increase in labor beyond that required for yearly change in case loads.

That this 60 days goal can be met by implementing the following measures:

i.    Supply an information sheet to all applicants when a Form 3370 application is prepared by potential employers. The sheet should detail for those on the Central Registry list or who are in the 422 process:

    (1)    What the situation is and what will happen if they are past or current subjects of an investigation, including the Valmonte process;

    (2)    How to immediately send supplemental information to the OCFS that will assist the AR when the subject's request is made.

ii.    Re-write all communications to the subject to achieve a much lower grade level and a higher reading ease level.

iii.    For 424-a and combo requests, replace the preliminary conference with written information about the hearing process provided with the letter to the subject after an Administrative Review decision to retain, and directions to attend a phone conference to clarify process and establish a hearing date.

iv.    Institute a training program and/or the preparation of a job aids to ensure that the Administrative Review lawyers can efficiently use CONNECTIONS to access the files for review, to eliminate delays caused by courier or mail delivery of documents.

v.    Send cases and finished reports between AR lawyers and OCFS staff electronically and as ready (i.e., do not batch files for greater than one day)

vi.    Administrative Review lawyers must make R&R decision for 424a cases based on the guidelines for R&R decisions. If needed, additional training should be developed and deployed to ensure consistent application of the guidelines.

vii.     Use e-mail to send documents and letters between LIA and OCFS (when not already included in CONNECTIONS)

viii.    Institute quality assurance to ensure AR lawyers are performing to criteria.

ix.     Give priority to all 424-a requests at every step in the AR and Fair Hearing. Provide immediate response to an employer whenever a Not R&R decision is rendered, even if the case is yet to go forward to Fair Hearing.

x.      Implement video teleconferencing to conduct Fair Hearings whenever possible to minimize delays caused by scheduling and unnecessary travel time and expense for all parties involved.

In accordance with Rule 26(c)and (2)(B), Dr. Sugarman's report together with his curriculum vitae, has been served on the defendant.

2.     Rona Wexler, M.A.
15934 Riverside Drive West, Suite 5J
New York, NY 10032-1016
646 335 5236

Ms. Wexler, a vocation evaluator, employability expert will testify, that in her opinion:

A job applicant without clearance from the State Central Registry has very limited employment options in occupations where they would be in direct or indirect contact with children and those involving the care, instruction or supervision of children in the State of New York.

In accordance with 26(a)and (2)(b) Ms. Wexler's report together with her curriculum vitae, has been served on the defendant

For Defendant:

None.

17

11. **EXHIBITS**:

For Plaintiff:

To be submitted by Friday, September 10, 2010

For Defendant:

To be submitted by Friday, September 10, 2010

12. **SUBSEQUENT AMENDMENT OF WITNESS OR EXHIBITS LISTS:**

To be provided.

13. **ESTIMATE OF TRIAL TIME:**

Plaintiff -    5 - 6 days

Defendant -    5 - 6 days

14. **PREVIOUS SUBSTANTIVE MOTIONS AND DISPOSITION:**

### Motion 1

1.    The State moved to dismiss the Complaint and alternatively for summary
      judgment. A decision was issued on July 2, 2007, Finch v. N.Y. State, et
      al., 499 F.Sup. 2d 521 (S.D.N.Y. 2007):

      The Court granted the State's motion as to:

      b.    All claims against the OCFS,
      c.    All claims brought under the Ninth Amendment to the United States
            Constitution;
      d.    All claims for money damages against the individual State
            defendants in their official capacities;

18

     e.    All claims for money damages against the individual State
              defendants in their individual capacity and

     f.    All requests for retrospective injunctive relief.

The Court <u>denied</u> State defendant's request as to:
     a.   Summary judgment on remaining claims;

     b.   Claims for prospective injunctive relief;

            Decision was issued on July 3, 2007, <u>Finch v. State</u>, 499 F.Supp.2d 521
(S.D.N.Y. 2007).

## Motion 2

2.    Plaintiffs moved to certify a class as the defendants had acted or refused to
      act on grounds that apply generally to the class so that final injunctive relief
      or affirmative declaratory relief would be appropriate;

      On August 11, 2008 the court granted plaintiff's motion and certified the
      class as to:

> "all persons who are working or desire to work or to be licensed in
> child-related employment who, now and in the future, are listed on
> the Statewide Central Register of Child Abuse and Maltreatment as
> the subjects of indicated reports that were investigated and indicated
> by a designated investigative agency, and who have timely requested
> amendment of the indicated reports and whose requests for
> amendment have not been disposed of."

> > Finch v. State, 252 F.R.D. 192 (S.D.N.Y.
> > 2008)

## Motion 3

3    Plaintiffs moved for Summary Judgment to declare the 422 and 424
     statutory scheme, as applied, violates due process to the class as was
     certified.

     The State defendants cross moved for summary judgment requesting that all

remaining claims in the Complaint be dismissed.

On December 18, 2008 the court issued its decision, Finch v. State, (2008WL5330616 (S.D.N.Y. 2008)) denied the plaintiff's motion for summary judgment and the State's cross motion for summary judgment finding that there was both a genuine issue of material fact as to whether delays in scheduling of administrative hearings in which prospective child care workers could challenge their listing as subjects of reports of child abuse or maltreatment in the statewide Central Register of Child Abuse and Maltreatment infringed a liberty interest of the workers.

4.    Defendant City of New York moved for summary judgment dismissing the Complaint against the City for alleged due process violations committed by City agencies and employees for failure to timely place Finch's grandchild into Finch's custody.

The court granted the City's motion to dismiss against City employees but denied the motion as to foster care agencies and its employees.

The court found no established constitutional violation in the City agencies' restricted visitation with the grandchild.

The litigation against the City has been settled.

## 15.    **REQUESTED EVIDENTIARY RULINGS:**

Defendant Motion in Limine - Pending.

## 16.    **JURY VERDICT:**

Not applicable.

## 17.    **VOIR DIRE QUESTIONS**

Not applicable.

18.    **TRIAL MEMORANDUM OF LAW AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN A NON-JURY TRIAL.**

Separately submitted.

SO ORDERED:

Dated:New York, New York

_____
Shira A. Scheindlin
United States District Judge

9/7/10

CONSENTED TO:

Law Offices of Thomas Hoffman, P.C.

By:_____
Thomas Hoffman
Attorney for Plaintiff

Andrew M. Cuomo
Attorney General

By:_____
Robert L. Kraft
Assistant Attorney General
Attorney for Defendant

21