UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
BARBARA FINCH, individually, on behalf of
Manny Moe and on behalf of all others         :        **OPINION AND ORDER**
similarly situated, CAROL JORDAN,
individually and on behalf of all others      :        04 Civ. 1668 (SAS)
similarly situated, and BARBARA ORTIZ,
individually and on behalf of all others      :
similarly situated,
:
                    Plaintiffs,               :

   - against -                                :

NEW YORK STATE OFFICE OF CHILDREN            :
AND FAMILY SERVICES; JOHN A.
JOHNSON, individually and in his capacity as  :
the Commissioner of the New York State Office
of Children and Family Services; THE CITY OF  :
NEW YORK, ADMINISTRATION FOR
CHILDREN'S SERVICES; WILLIAM C. BELL,         :
individually and in his capacity as Commissioner  :
of the Administration for Children's Services of the
City of New York; DAVE R. PETERS, individually :
and in his capacity as Director, State Central
Register, New York State Office of Children and   :
Family Services, Division of Development and
Prevention Services; JANE DOE 1, individually     :
and in her capacity as a Supervisor of the State
Central Register; JANE DOE 2, individually and    :
in her capacity as an employee of the State Central
Register; JOHN DOE 1, individually and in his     :
capacity as a Supervisor of Administration for
Children's Services; and JOHN DOE 2,              :
individually and in his capacity as an employee of
Administration for Children's Services,           :

                    Defendants.                :
------------------------------------------------------------------X
SHIRA A. SCHEINDLIN, U.S.D.J.:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/5/12_

## I.    INTRODUCTION

On February 24, 2004, plaintiffs brought a class action lawsuit against, *inter alia*, the New York State Office of Children and Family Services ("OCFS"); John A. Johnson, Commissioner of the OCFS; and Dave R. Peters, Director of the Statewide Central Register of Child Abuse and Maltreatment (the "SCR") (collectively the "State Defendants" or "defendants").[1]  Plaintiffs alleged that the inordinate delays in the scheduling of administrative hearings – in which class members could challenge their listing as subjects of "indicated" reports of child abuse/maltreatment in the SCR – violated their due process rights.  After this Court certified a class, which was subsequently divided into two subclasses (Subclass A and Subclass B), the parties settled all outstanding claims.  Pursuant to 42 U.S.C. § 1988 ("section 1988"), plaintiffs now move for the following attorneys' fees and costs: $711,781.25 in attorney's fees and $16,343.10 in costs relating to the Subclass A litigation; $50,000.00 in attorneys' fees and $639.00 in costs for first year monitoring services rendered with regard to the Subclass B litigation; $18,685.42 in attorneys' fees incurred in recovering attorneys' fees and

---

[1]    Both individual defendants have since retired.  Gladys Carrion is now the Commissioner of the OCFS and Linda Joyce is now acting Director of the SCR.  The "City Defendants" include the City of New York, the Administration for Children's Services, and William C. Bell, individually and in his capacity as Commissioner of the Administration for Children's Services.  The claims against the City Defendants were severed from the instant action and were resolved independently.

costs under section 1988; and $7,554.87 for additional fees and costs incurred in recovering fees and costs under section 1988.[2] For the following reasons, plaintiffs' motion is granted but not in the amounts requested.

## II.   BACKGROUND

This case was originally assigned to the Honorable Richard C. Casey, who died on March 22, 2007. While under the supervision of Judge Casey, plaintiffs filed their First Amended Complaint on June 14, 2004. The State Defendants moved to dismiss the First Amended Complaint in its entirety while plaintiffs cross-moved to have New York Social Services Law § 422(6) ("NY SSL § 422(6)") declared unconstitutional.[3] Although these motions were fully submitted as of April 8, 2005, they were not decided until after the case had been reassigned to my docket on May 25, 2007.[4]

In an Opinion and Order dated July 3, 2007, the motion to dismiss was decided and the following claims were dismissed: "(1) all claims against the

---

[2]     Plaintiffs' counsel incurred another $7,522.92 in attorneys' fees and $31.95 in costs in replying to the State Defendants' opposition to the instant motion. *See* Addendum 4.

[3]     NY SSL § 442(6) states that "the record of the report to the statewide central register shall be expunged ten years after the eighteenth birthday of the youngest child named in the report."

[4]     There was no activity by plaintiffs' counsel during this more than two year gap.

3

OCFS; (2) all claims brought under the Ninth Amendment of the United States Constitution; (3) claims for money damages against the individual State defendants in their official capacities; (4) claims for money damages against the individual State defendants in their individual capacities; and (5) claims seeking injunctive relief for past conduct."[5]  Any claims against the State Defendants based on state statutory violations were also dismissed.[6]  Plaintiffs' cross-motion seeking declaratory relief was withdrawn and deemed moot.[7]  Thus, only the claim for prospective injunctive relief against the individual State Defendants survived the motion to dismiss.[8]

Plaintiffs then moved for class certification.  On August 11, 2008, this Court certified the following class:

> all persons: (1) who are working or desire to work or to be licensed in the childcare field; (2) who are now, or in the future will be, listed on the Statewide Central Register as subjects of indicated reports of child abuse that were investigated by and indicated by a designated investigative agency; (3) who timely requested amendment of the

---

[5]     *Finch v. New York State Office of Children and Family Servs.*, 499 F. Supp. 2d 521, 539-40 (S.D.N.Y. 2007).

[6]     *See id.* at 525, n.6.

[7]     *See id.* n.7.

[8]     *See id.* at 540.

indicated reports; and (4) whose requests for amendment have not been disposed of.[9]

Plaintiffs then moved, and the State Defendants cross-moved, for summary judgment.  Both motions were denied in a Memorandum Opinion and Order dated December 18, 2008.[10]

Plaintiffs filed their Third Amended Complaint on August 17, 2009. The Third Cause of Action in the Third Amended Complaint defined the claims of persons whom the parties later designated as members of Subclass B.  In the Stipulation of Partial Settlement of Class Action ("Stipulation of Settlement"), signed by the Court on February 5, 2010, the members of the class previously certified in this action were designated as members of Subclass A and a separate Subclass B was certified with regard to persons who were incorrectly classified by the OCFS as having waived the right to an administrative hearing.  After a fairness hearing was held on April 20, 2010, the Subclass B Stipulation of Settlement was finally approved.  Class counsel was appointed to monitor compliance.

After the Subclass B settlement was approved, the parties resolved the issue of attorneys' fees and class counsel was paid $400,000.00 for work done on

---

[9]     *Finch v. New York State Office of Children and Family Servs.*, 252 F.R.D. 192, 194 (S.D.N.Y. 2008).

[10]     *See Finch v. New York State Office of Children and Family Servs.*, No. 04 Civ. 1668, 2008 WL 5330616, at *4 (S.D.N.Y. Dec. 18, 2008).

behalf of the Subclass B members through the effective date of the Stipulation of Settlement.  The Stipulation of Settlement further provided that class counsel could seek additional attorneys' fees for work done monitoring the State Defendants' compliance with the terms of the settlement.  Monitoring fees for the first year of monitoring were capped at $50,000.00.[11]

The remaining causes of action in the Third Amended Complaint applicable to Subclass A members were scheduled to go to trial on October 27, 2010.  On the eve of trial, the parties informed the Court that they intended to settle the two remaining causes of action (the First and Second Causes of Action). Accordingly, the parties entered a Stipulation of Settlement of Class Action, dated November 4, 2010 (the "State Settlement Agreement").  A fairness hearing was scheduled for February 7, 2011, to evaluate the fairness, reasonableness and adequacy of both the State and City settlements.[12]  At the fairness hearing, no one objected to the proposed settlements.  On February 17, 2011, the Court gave its

---

[11]     *See* 7/21/10 Letter from Thomas Hoffman to Robert L. Kraft, Ex. 1 to the Declaration of Robert L. Kraft in Opposition to Plaintiffs' Motion for Attorney[s'] Fees ("[A]ssuming we can resolve the outstanding fee request, in the interest of arriving at an amicable resolutions, I would agree to a cap of $50,000 for the first year of monitoring.").

[12]     The claims against the City Defendants were resolved in a separate Stipulation and Order of Settlement and Discontinuance, signed by the Court on May 20, 2011.

final approval of the State Settlement Agreement, thereby resolving the Subclass A members' outstanding claims.  The instant motion followed.

## III.   LEGAL STANDARD

A "prevailing party" in a civil rights action is entitled to an award of attorneys' fees and costs.[13]  Furthermore, a prevailing party is also entitled to reimbursement for time reasonably expended in preparing his attorneys' fee application.[14]  A "prevailing party" is a party who achieves a "'material alteration of the legal relationship of the parties'. . . ."[15]  District courts are afforded considerable discretion in determining the amount of reasonable attorneys' fees in any given case.[16]  The methodology to be used in determining those amounts is the

---

[13]     *See* 42 U.S.C. § 1988(b) (stating that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" in civil rights actions).  *See also Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir. 2001) ("Although a district court typically has wide discretion in choosing whether to deny attorneys' fees, . . . this discretion is narrowed by a presumption that successful civil rights litigants should ordinarily recover attorneys' fees unless special circumstances would render an award unjust.").

[14]     *See Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) ("[A] reasonable fee should be awarded for time reasonably spent in preparing and defending an application for § 1988 fees.").

[15]     *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 604 (2001) (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989)).

[16]     *See Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (stating that district courts' discretion in awarding fees is not "unfettered");
(continued...)

7

"lodestar" approach.  In addition, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."[17]

The Supreme Court has endorsed the "lodestar" approach as the superior method to be used in determining attorneys' fees, describing it as "'the guiding light of . . . fee-shifting jurisprudence.'"[18]  Disfavoring the *Johnson* approach and its twelve, case-specific factors[19] as being too subjective,[20] the

---

[16](...continued)
*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998) ("The district court retains discretion to determine . . . what constitutes a reasonable fee.").

[17]     *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

[18]     *Perdue v. Kenny*, 130 S. Ct. 1662, 1672 (2010) (quoting *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002) (internal quotation marks and citation omitted)).  In *Perdue*, the issue was whether an attorney's fee award could be increased (enhanced) based on the attorney's superior performance.

[19]     *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  The twelve *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."  *Hensley*, 461 U.S. at 430, n.3.

[20]     *See Perdue*, 130 S. Ct. at 1671-72.  "This method, however, 'gave very little actual guidance to district courts.  Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges

(continued...)

Supreme Court has stated that "there is a 'strong presumption' the lodestar figure is

reasonable[.]"[21] In applying *Perdue*, the Second Circuit has stated:

> Both this Court and the Supreme Court have held that the
> lodestar – the product of a reasonable hourly rate and the
> reasonable number of hours required by the case – creates
> a "presumptively reasonable fee." While the lodestar is not
> always conclusive, its presumptive reasonability means
> that, absent extraordinary circumstances, failing to calculate
> it as a starting point is legal error. A detailed explanation
> of the lodestar calculation is unnecessary, but compliance
> with the Supreme Court's directive that fee award
> calculations be "objective and reviewable," implies the
> district court should at least provide the number of hours
> and hourly rate it used to produce the lodestar figure.[22]

According to the Supreme Court,

> the lodestar method produces an award that *roughly*
> approximates the fee that the prevailing attorney would
> have received if he or she had been representing a paying
> client who was billed by the hour in a comparable case.
> [Furthermore], the lodestar method is readily administrable;
> and unlike the *Johnson* approach, the lodestar calculation
> is "objective," and thus cabins the discretion of trial judges,

---

[20](...continued)
and produced disparate results.'" *Id.* at 1672 (quoting *Pennsylvania v. Delaware
Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) ("*Delaware
Valley I*")).

[21]     *Id.* at 1673.

[22]     *Millea*, 658 F.3d at 166-67 (citations omitted).

9

permits meaningful judicial review, and produces reasonably predictable results.[23]

The aim of section 1988 "is to enforce the covered civil rights statutes, not to provide 'a form of economic relief to improve the financial lot of attorneys.'"[24] Thus, "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case."[25] There is a "strong" presumption that "the lodestar method yields a fee that is presumptively sufficient to achieve this objective."[26]

"In determining what fee is reasonable, the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'"[27] In doing so, "the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well

---

[23]    *Perdue*, 130 S. Ct. at 1672 (citations omitted, emphasis in original).

[24]    *Id.* at 1673 (quoting *Delaware Valley I*, 478 U.S. at 565).

[25]    *Id.* at 1672 (citing *Delaware Valley I*, 478 U.S. at 565 ("[I]f plaintiffs . . . find it possible to engage a lawyer based on the statutory assurance that he will be paid a 'reasonable fee,' the purpose behind the fee-shifting statute has been satisfied."); *Blum v. Stenson*, 465 U.S. 886, 897 (1984) ("[A] reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys." (ellipsis, brackets, and internal quotation marks omitted))).

[26]    *Id.* at 1673.

[27]    *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434).

as to the evidentiary submissions and arguments of the parties."[28]  "In reducing the 'lodestar' amount, the court may exclude the excessive and unreasonable hours from its calculation by making an across-the-board reduction, or percentage cut, in the amount of hours."[29]

There is no rule requiring proportionality between the amount of fees requested and the damages recovered.  The Second Circuit has stated:

> While a court may, in exceptional circumstances, adjust the lodestar, it may not disregard it entirely.  Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel. The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery.  Thus, the district court abused its discretion when it ignored the lodestar and calculated the attorneys' fees as a proportion of the damages awarded.[30]

"Reasoning that a rule calling for proportionality between the fee and the monetary amount involved in the litigation would effectively prevent plaintiffs from

---

[28]   *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985).

[29]   *T.S. Haulers, Inc. v. Cardinale*, No. 09 CV 0451, 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011) (citing *Green v. City of New York*, 403 Fed. App'x 626, 630 (2d Cir. 2010) (stating that district courts are authorized "to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application'") (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (internal quotation marks and citation omitted))).

[30]   *Millea*, 658 F.3d at 169 (citation omitted, emphasis in original).

obtaining counsel in cases where deprivation of a constitutional right caused injury of low monetary value, [courts] have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation."[31]

"'[T]he most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff."[32]  "Hours spent on unsuccessful fee-shifting claims, like those spent on claims wholly ineligible for fee-shifting, must be excluded from the reasonable hours spent on the case when calculating the lodestar."[33]  As recognized by the Supreme Court, where

> a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.  Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with

---

[31]     *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) (citing cases).

[32]     *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

[33]     *Millea*, 658 F.3d at 168.

devotion and skill.  Again, the most critical factor is the degree of success obtained.[34]

The "degree of success" inquiry "is not limited to inquiring whether a plaintiff prevailed on individual claims."[35]  "Both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved."[36]  Accordingly, "a district judge's authority to reduce the fee awarded to a prevailing plaintiff below the lodestar by reason of the plaintiff's 'partial or limited success' is not restricted either to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal or technical victory."[37]

"The reasonable hourly rate is the rate a paying client would be willing to pay."[38]  In determining the reasonable hourly rates to be applied, courts should look to the market rates "'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"[39]  "The

---

[34]    *Hensley*, 461 U.S. at 436.

[35]    *Barfield*, 537 F.3d at 152.

[36]    *Id.* (quotation marks and citation omitted).

[37]    *Kassim*, 415 F.3d at 256.

[38]    *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008).

[39]    *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting
(continued...)

relevant community to which the court should look is the district in which the case was brought."[40]  To compensate for the delay in payment, the hourly rates to be used should be "'current rather than historic hourly rates.'"[41]  In sum, in determining a reasonable hourly rate, courts "should bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."[42]

## IV.   DISCUSSION

### A.   Counsel's Hourly Rate

Thomas Hoffman is the plaintiffs' lead attorney.  He works in a very small law firm[43] and has forty-two years experience in the fields of civil rights and family law.  Plaintiffs seek to compensate Hoffman at the rate of $550 per hour, citing *DeCurtis v. Upward Bound International, Inc.* for the proposition that "rates awarded to experienced civil rights attorneys over the past ten years have ranged

---

[39](...continued)
*Blum*, 465 U.S. at 896, n.11).

[40]      *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d at 232).

[41]      *Gierlinger*, 160 F.3d at 882 (quoting *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989)).

[42]      *Arbor Hill*, 522 F.3d at 190.

[43]      The Law Offices of Thomas Hoffman, P.C. consist of Thomas Hoffman, two paralegals/secretaries, and associate attorneys hired for short periods of time.

from $250 to $600 . . . ."[44]   Defendants object to this rate as unreasonably high.[45]

Defendants point to *E.S. v. Katonah-Lewisboro School District*, where the hourly

rate for a managing partner of a three-attorney law firm was reduced from $415 to

$350 per hour.  In making this reduction, the court relied, in part, on *Heng Chan v.*

*Sung Yue Tung Corp.*,[46] stating as follows:

> Although courts in this jurisdiction have awarded hourly
> rates exceeding $400 to attorneys in civil rights cases, such
> awards are only warranted in "unusually difficult and
> complex" cases.   The plaintiff in *Heng Chan* was
> represented pro bono by Skadden, Arps, Slate, Meagher
> and Flom, LLP, one of the largest and most well-regarded
> law firms in the world.  Lead counsel was a partner with
> over sixteen years of litigation experience.  Moreover, the
> case involved "a host of witnesses and parties, numerous
> boxes of documents, and depositions and investigations
> conducted in four languages."  Lead counsel received a fee
> award of $450 per hour.[47]

---

[44]   *DeCurtis v. Upward Bound Int'l, Inc.*, No. 09 Civ. 5378, 2011 WL 4549412, at *8 (S.D.N.Y. Sept. 27, 2011) (quotation marks and citations omitted).

[45]   Defendants do not oppose the rates for the other attorneys (ranging from $175 to $325 per hour) or Hoffman's paralegal ($125 per hour).

[46]   No. 03 Civ. 6048, 2007 WL 1373118  (S.D.N.Y. May 8, 2007).

[47]   *E.S. v. Katonah-Lewisboro School Dist.*, 796 F. Supp. 2d 421, 430 (S.D.N.Y. 2011) (citing and quoting *Heng Chan*).

Defendants also point to *Davis v. City of New York*, a recent decision where this Court approved of a rate of $425.00 per hour for the plaintiffs' most senior attorney, who had thirty-one years of experience.[48]

In determining reasonable hourly rates for civil rights attorneys, this Court has stated it is appropriate to determine whether the billing attorneys are "more like members of a large New York City law firm than they are like members of a nonprofit organization or a two to three-person obscure law firm."[49]  Here, Hoffman's billing practices reflect the fact that he operates, in large part, as a solo practitioner.[50]  Although plaintiffs argue that the requested rate of $550 per hour is "substantially less" than the rates charged by partners in large law firms, it is not that much less than the maximum rate, $600 per hour, cited by courts in this

---

[48]     *Davis v. City of New York*, No. 10 Civ. 699, 2011 WL 4946243, at *5 (S.D.N.Y. Oct. 18, 2011) (the rate approved for the next most experienced attorneys, with twenty-four and twenty years of experience, was $400.00 per hour).

[49]     *Wise v. Kelly*, 620 F. Supp. 2d 435, 446 (S.D.N.Y. 2008) (citing cases awarding rates between $350-$430 per hour for experienced civil rights litigators).

[50]     The size of the law firm is a significant factor in determining the relevant market rates.  *See, e.g., Reiter v. Metropolitan Transp. Auth. of State of New York*, No. 01 Civ. 2762, 2007 WL 2775144 (S.D.N.Y. Sept. 25, 2007) ("[T]he fact is that the large firms listed on the [National Law Journal] survey have acquired a reputation that allows them to command high rates in the market.  Many other firms, in particular smaller firms that may be providing equally capable services, simply do not command anywhere near such rates . . . .").

Circuit.[51]  And unlike large law firms, where less demanding tasks are delegated to

junior associates, Hoffman did most of the work himself.[52]  However, there is

something to be said for solo practitioners and very small firms that avoid the often

duplicative billing that is found when junior and senior attorneys work together

and both bill for tasks that one attorney could have handled.

      Rates of $550 per hour or more are reserved for extraordinary

attorneys held in unusually high regard by the legal community.[53]  The $550 hourly

---

[51]     "Consistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time."  *Mugavero v. Arms Acres Inc.*, No. 03 Civ. 5724, 2010 WL 451045 at *5 (S.D.N.Y. Feb. 9, 2010) (quotation marks and citation omitted).

[52]     Hoffman charged a total of 1,237.42 hours (approximately 85%) where the four other attorneys, combined, charged 160.50 hours (approximately 11%) and the paralegal charged 64.33 hours (approximately 4%).  These hours encompass the hours spent on the Subclass A litigation (1,410.16 hours) plus the hours spent recovering attorney's fees (52.09 hours) and exclude those hours spent on monitoring Subclass B compliance.  Indeed, plaintiffs concede that "[t]he attorney staffing was kept to a minimum."  Reply Memorandum to Defendants['] Memorandum in Opposition to Plaintiffs' Request for Legal Fees ("Reply") at 9.

[53]     There are only a handful of civil rights cases within the Southern District of New York where an attorney was awarded $500 per hour or more.  *See, e.g., Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (awarding $600 per hour in an employment discrimination case to senior partners at Outten & Golden, LLP, a recognized leader in the field of employment law); *Robinson v. City of New York*, No. 05 Civ. 9545, 2009 WL 3109846, at *5 (S.D.N.Y. Sept. 29. 2009)  (granting plaintiffs' request for attorneys' fees in employment retaliation case at a rate of $500 for a partner at McLauglin & Stern, LLP, a firm comprised of

(continued...)

rate was previously applied by this Court only once, in *Scott v. City of New York.*[54] In *Scott*, the plaintiffs sought attorneys' fees for a well-known attorney with uniquely strong trial skills.[55]  Although the Second Circuit approved the hourly rate previously determined by this Court, it vacated the fee award on other grounds.[56]

Furthermore, the rate of $450 per hour was charged by Hoffman in monitoring defendants' compliance with the Subclass B settlement.[57]  I cannot discern a valid reason for the discrepancy in the rates charged for Subclass A and Subclass B.  To give plaintiffs the requested rate of $550 per hour for Hoffman's time would inflate the fee award beyond what a reasonable, paying client – "wish[ing] to spend the minimum necessary to litigate the case effectively" – would be willing to pay.[58]  Therefore, I agree with the hourly rate proposed by the

---

[53](...continued)
more than eighty attorneys having a particular expertise in, *inter alia*, employment law).

[54]    *Scott v. City of New York*, No. 02 Civ. 9530, 2011 WL 867242 (S.D.N.Y. Mar. 9, 2011), *vacated on other grounds by* 643 F.3d 56 (2d Cir. 2011).

[55]    "Puccio's requested hourly rates, which ranged from $750 to $ 1,000 per hour, were reduced to $550 per hour for all time charged."  *Scott*, 2011 WL 867242, at *1 n.6.

[56]    *See* 643 F.3d at 59.

[57]    *See* Declaration of Thomas Hoffman in Support of Motion for Award of Legal Fees and Costs ("Hoffman Decl."), Ex. B.

[58]    *Arbor Hill*, 522 F.3d at 190.

18

defendants and find that Hoffman should be compensated at the rate of $450 per hour.  The net effect is an overall reduction in fees in the amount of $123,742.00.

**B.  Unsuccessful Claims**

**1.  Plaintiffs' Opposition to Defendants' Motion to Dismiss**

The State Defendants filed a motion to dismiss and, in the alternative, for summary judgment.  Plaintiffs opposed this motion and cross-moved to have NY SSL § 442(6) declared unconstitutional, a claim that was later withdrawn.  The State Defendants prevailed in large part as the Court dismissed all claims for money damages as well as claims seeking injunctive relief for past conduct and claims based on violations of state statutory law.  The only claim that survived was plaintiffs' claim for prospective injunctive relief.   Plaintiffs propose an across-the-board percentage reduction and a dollar-for-dollar reduction for time incurred by counsel on unsuccessful claims.

In Addendum 3, plaintiffs quantified the amount of fees incurred in opposing the State Defendants' motion to dismiss.  The total amount of time is 78.67 hours, all of which is for Hoffman.  Thus, the total amount of fees, adjusted for the decrease in Hoffman's hourly rate, is $35,401.50  Plaintiffs propose either no adjustment or a reduction of fifteen percent which plaintiffs compute to be

19

$7,355.00.[59]  However, given that the State Defendants prevailed on the vast

majority of claims asserted by plaintiffs, I find that only forty percent is

compensable.  In other words, sixty percent of the adjusted total of $35,401.50 is

not subject to fee-shifting due to plaintiffs' lack of success.  The net adjustment is a

reduction in fees in the amount of $21,240.90.

Similarly, both sides have identified particular time charges incurred

for time spent by plaintiffs pursuing claims for money damages.  Plaintiffs have

summarized some of these charges in Addendum 2, while the defendants merely

identified the dates of entries to which they are objecting.  The total amount in

Addendum 2 is 19.50 hours, which includes all of the entries identified by

defendants except for the entry on 10/24/2004.  That entry, which was for research

regarding personal involvement, represents four hours which, at Hoffman's

reduced hourly rate, translates to $1,800.00.  Thus, the reduction in fees for time

spent researching unsuccessful claims is $10,575.00 ((19.50 hours x $450/hour) +

$1,800).  In addition, defendants object to the inclusion of fees regarding plaintiffs'

unsuccessful cross-motion for summary judgment.  The total time charges for that

motion amount to 30.17 hours.  At Hoffman's adjusted hourly rate, the total dollar

amount is $13,576.50.  It is plaintiffs' position that only half of this amount should

---

[59]     $7,355 is approximately seventeen percent of the total
($7,355/$43,266.67).  Plaintiffs' math error is of no moment as their suggested
percentage reduction is rejected.

be deducted because "the same research was later used in trial preparation and in negotiating the terms of the final settlement."[60]   Because I agree with plaintiffs, compensable fees will be further reduced by $6,788.25.   Thus, the reduction in fees for specifically identified, non-compensable entries is $17,363.25, while the total combined reduction for plaintiffs' unsuccessful claims is $38,604.15.

## C.   Overlapping Claims

### 1.   Research and Drafting the Complaint

The original Complaint filed on February 27, 2004, included claims against both the State Defendants and the City Defendants.  Plaintiffs have summarized these charges in Addendum 1.  The total number of hours for drafting the Complaint, all of which were incurred by Hoffman, is 20.50 hours.  At Hoffman's adjusted hourly rate of $450 per hour, the total dollar amount is $9,225.00.  Plaintiffs argue that the State claims predominated over the City claims in the Complaint and suggest a proposed reduction of fifty percent.  As with plaintiffs' mostly unsuccessful opposition to defendants' motion to dismiss, I find that sixty percent of the adjusted total is non-compensable.  Accordingly, a reduction in the amount of $5,535.00 is appropriate for this issue.

---

[60]      3/2/12 E-Mail from Hoffman to the Court.

### 2. E-mails to Counsel for the City of New York and Others

Defendants object to those time charges relating to e-mails and telephone calls to Abby Goldenberg counsel for the City Defendants. Defendants have identified two entries, one on 7/11/2007 (0.33 hours) and the other on 8/20/2007 (0.17 hours).[61]  Plaintiffs have agreed they will not seek compensation for this time.  However, in reviewing Hoffman's detailed time sheets, I found several more entries reflecting communications with Goldenberg.  On 3/11/2008, Hoffman billed 0.17 hours for reviewing an e-mail from Goldenberg.  He billed the same amount (0.17 hours) the next day, 3/12/2008, for e-mails to and from Goldenberg.  On 11/10/2008, there is a time entry for a telephone conversation with Goldenberg for 0.17 hours.  The total reduction for Hoffman's correspondence with counsel for the City of New York is 1.01 hours which translates at $450 per hour to $451.01.

### 3. Inadvertent Billing for Mystery Reply Memorandum

Defendants have identified time charges in June 2005 for the research and drafting of a reply memorandum of law unrelated to this case.  Plaintiffs concede that this reply memorandum was related to the litigation against the City

---

[61]   Defendants list the date of this entry as 8/21/2007, but the description of the entry actually coincides with the entry dated 8/20/2007.

Defendants and should be excluded.  The total time charges amount to 11.00 hours, resulting in a reduction of $4,950.00.

### 4.   March 2004 Discovery

In 2004, Hoffman billed for his work in drafting interrogatories and a notice to produce.  These entries are dated 3/4/2004 (1.25 hours), 3/5/2004 (1.25 hours), and 3/8/2004 (2.00 hours).  This discovery addressed both State and City claims.[62]  Furthermore, the notice to produce and interrogatories were not served because discovery was stayed pending defendants' motion to dismiss.  However, the drafts were used as the basis for plaintiffs' final discovery demands, which were served upon the State Defendants.  Plaintiffs suggest a reduction of fifty percent for this matter. I will therefore reduce the fees by $1,012.50.

### 5.   Supplemental Complaint

Defendants argue that work done in connection with the "First Supplemental Complaint" should be excluded.  The associated time entries are dated 12/17/2004 (1.00 hour); 12/20/2004 (0.50 hours); and 12/21/2004 (1.00 hour).  Although not filed electronically, the First Supplemental Complaint was indeed served upon the State Defendants.  Plaintiffs state that the failure to file the First Supplemental Complaint electronically was "inadvertent" and therefore object

---

[62]      *See* Reply at 4.

to excluding this item.[63]  If this item were excluded, a reduction in the amount of

$1,125 would be warranted.  Because the amount of the adjustment is *de minimus*,

and in light of all the other adjustments made,  I will not further reduce the

compensable attorneys' fees in this case.

### D.    Subclass B Monitoring

Class counsel was appointed to monitor defendants' compliance with

the terms of the Subclass B settlement.  Although the fees for the first year of

monitoring totaled $77,551.77,[64] there is a $50,000 cap on the amount of fees to be

reimbursed.[65]  Accordingly, plaintiffs are hereby awarded $50,000.00 in fees and

$639.00 in costs for the first year of Subclass B monitoring.[66]

### E.    Costs

An award of costs under section 1988 "normally include[s] those

reasonable out-of-pocket expenses incurred by the attorney and which are normally

charged fee-paying clients."[67]  "The rationale for this rule is that attorney[s'] fees

---

[63]     *Id.*

[64]     *See* Hoffman Decl., Ex. B.

[65]     *See supra* n.10.

[66]     Because Hoffman billed at $450 per hour for the Subclass B
monitoring, no adjustment is needed to reduce his hourly rate.

[67]     *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278,
283 (2d Cir. 1987) (citation marks and citation omitted).  *Accord Weyant*, 198 F.3d

(continued...)

include expenses that are 'incidental and necessary' to the representation, provided they are 'reasonable.'"[68] Accordingly, "[i]dentifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under § 1988 and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate."[69] Here, plaintiffs seek costs, exclusive of non-taxable expert witness fees, in the amount of $17,014.05, for photocopying, mailing, court fees, etc.[70] Because this amount is reasonable given the length of this litigation, plaintiffs are awarded full costs.

## V.   CONCLUSION

In sum, plaintiffs seek $787,989.59 in attorneys' fees and $17,014.05 in costs.  A reduction in the amount of $123,742.00 was made to adjust Hoffman's hourly rate.  A combined reduction of $38,604.15 was made to reflect plaintiffs'

---

[67](...continued)
at 316 (stating that "a reasonable fee should be awarded for time reasonably spent in preparing and defending an application for § 1988 fees") (citing cases).

[68]    *Id.* (quoting *Northcross v. Board of Educ.*, 611 F.2d 624, 639 (6th Cir. 1979)).

[69]    *Kuzma v. I.R.S.*, 821 F.2d 930, 933-34 (2d Cir. 1987) (citing cases).

[70]    This figure is comprised of $16,343.10 for costs relating to the Subclass A litigation, plus $639.00 in costs relating to the Subclass B litigation, plus $31.95 in additional costs incurred in replying to defendants' opposition to the instant motion.

unsuccessful claims.  Further reductions to account for plaintiffs' overlapping claims were made in the total amount of $11,948.51.  Accordingly, plaintiffs are hereby awarded total attorneys' fees of $613,694.93 and total costs of $17,014.05, for a combined award of $630,708.98.  The Clerk of the Court is directed to close plaintiffs' motion for attorneys' fees and costs (Docket Entry #111).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 5, 2012

26

- **Appearances** -

**For Plaintiffs:**

Thomas Hoffman, Esq.
Law Offices of Thomas Hoffman, P.C.
250 West 57th Street, Suite 1020
New York, New York 10107
(212) 581-1180

**For State Defendants:**

Robert L. Kraft
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8632